## UTA-CARBON COAL CO. et al. v. INDUSTRIAL COMMISSION et al.

No. 6560.   Decided July 29, 1943.   (140 P. 2d 649.)

See 31 C. J. S., Evidence, sec. 79; 28 R. C. L., 807.

*Senior & Senior* and *F. A. Trottier,* all of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., *Herbert F. Smart,* Asst. Atty. Gen., and *Marl D. Gibson,* of Price, for defendants.

WADE, Justice.

The plaintiffs, Uta-Carbon Coal Co. and the State Insurance Fund, have applied to this court for a writ of certiorari to review a decision of the Industrial Commission finding that the Defendant Dan Obradovich is suffering from the

occupational disease of silicosis with superimposed tuber-culosis, and awarding him $12 per week so long as he is totally disabled, not to exceed the sum of $800 and in addition thereto medical and hospital expenses not to exceed $500.

It is plaintiffs' contention that the decision of the Commission is unlawful because: (1) There is no substantial, competent evidence that the applicant was exposed to harmful quantities of silicon dioxide dust in Utah for a period of 5 years during the 10 years immediately preceding his disablement; (2) that there was no substantial competent evidence that he was exposed to harmful quantities of silicon dioxide dust in the employ of the Uta-Carbon Coal Co. for a period of 60 days after July 1, 1941, which was the effective date of the act; and (3) there was no proof of causal connection between his disability and any exposure to silicon dioxide dust in the employ of the Uta-Carbon Coal Co. or in his employment in the State of Utah during the 10-year period preceding his disablement.

The testimony at the hearing before the commission was undisputed that Dan Obradovich, the applicant, had worked in mines in Utah since 1912; that he had worked as a coal miner for the Sweet Coal Co. in Utah from October 17, 1929, until January 2, 1934, and for a short period in January 1934 he worked in a metal mine at Mercur, Utah and thereafter, also commencing in January 1934 and until July 28, 1935, he was prospecting for coal at Scofield, Utah; that from July 29, 1935, to April 10, 1942, he was an employee of the Uta-Carbon Coal Co. at Rains, Utah, where he worked in various capacities as an underground coal miner. The evidence also disclosed that applicant quit working for the Uta-Carbon Coal Co. on April 10, 1942, because he was ill. He was coughing, his chest pained him and he was short of breath. This was the first time he noticed a pain in his chest and was coughing, although in August or September, 1941, he had noticed a shortness of breath upon exertion. Dr. Gorishek, the company doctor, whom he consulted,

testified that a physical examination of claimant revealed an occasional rale on the right side of the chest, that he had lost weight, was coughing and raising a considerable amount of purulent sputum, he had a cyanosis of his lips and fingernails, moderate exercise revealed shortness of breath, and an X-ray examination by Dr. Kerby of Salt Lake City, Utah,

"showed positive findings of a diffused fibrosis throughout the lungs and a scattered healed tuberculo-foci in each upper lobe cavity in the right part."

and his diagnosis was the applicant was suffering from tuberculo silicosis.

It is one of plaintiffs' contentions that the commission did not have competent evidence before it from which it could find applicant was suffering from silicosis because Dr. Gorishek's testimony was based on a diagnosis by Dr. Kerby, the X-ray specialist to whom Dr. Gorishek had sent applicant, and therefore his testimony as to what Obradovich is suffering from is hearsay and inadmissible under Sec. 42-1a-43. U. C. A. 1943. Plaintiffs overlook the fact that Dr. Kerby in making this diagnosis was acting for Dr. Gorishek, the company doctor. They also overlook the fact that there had been introduced into evidence the report of Dr. Gorishek to the commission, wherein he stated that it was his opinion that applicant is suffering from silicosis complicated by tuberculosis. This report was furnished the commission in compliance with Sec. 42-1-91, U. C. A. 1943, which provides that:

"All physicians and surgeons attending injured employees shall comply with all of the rules and regulations * * * adopted by the commission, and shall make reports to the commission at any and all times required by it as to the condition or treatment of any injured employee * * *."

It is our opinion that a report of this type comes within the exception to the hearsay rule and is such a one as is described in Rule 516, American Law Institute's Model Code of Evidence, pages 275, 276, to wit:

"* * * evidence of a writing made as a record, report, or memorandum of facts and conclusions concerning an act, event, or condition, * * * is admissible as tending to prove the truth of each matter stated therein in compliance with statutory requirements if * * * (a) the maker of the writing was duly authorized pursuant to statute to perform designated functions performance of which by persons not so authorized was forbidden by statute, and was required by statute to file a written report in a designated place or office setting forth specified matters relating to the performance of those functions and the persons or things connected therewith, and (b) the writing was made and filed by him as a report so required by the statute."

There was also introduced into evidence Public Health Bulletin No. 270, entitled "Soft Coal Miners Health and Working Environment," a pamphlet issued by the U.S. Public Health Service, based on an investigation of soft coal mines in Carbon County, Utah. Plaintiffs admitted that the conditions in the Uta-Carbon Coal Mine are similar to conditions, described in the pamphlet, of the mines which were investigated. This report indicated that silicon dioxide is present in varying amounts in coal mines in Carbon County. Sec. 42-1a-29, U. C. A. 1943, defines silicosis for the purposes of the Act as:

"* * * a chronic disease of the lungs caused by the prolonged inhalation of silicon dioxide dust (SiO2) characterized by small discrete nodules of fibrous tissue similarly disseminated throughout both lungs, causing a characteristic X-ray pattern, and by variable clinical manifestations."

Among the signs and symptoms of silicosis outlined in Public Health Bulletin No. 270, appear the following: Shortness of breath, particularly upon exertion, cough, chest pain, and rales. Dr. Gorishek testified Abradovich had the symptoms described above. It is our opinion that there was ample evidence from which the commission could find, as it did, that applicant was suffering from silicosis with superimposed tuberculosis.

Sec. 42-1a-13 (3), U. C. A. 1943, provides that:

"No compensation shall be paid in case of silicosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide (SiO2) dust for a total period of not less than five years in this state and unless total disability results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed."

As we have stated above, the evidence was undisputed that applicant had worked in coal mines in Utah for over 12 years and he had worked for seven years in this state for the employer from whom he seeks compensation. It is not disputed that the mine in which he worked contained silicon dioxide dust; what is disputed is that it contained silicon dioxide dust in harmful quantities.

Our legislature has not seen fit to define what amounts of silicon dioxide dust are to be considered harmful. On page 57 of Public Health Bulletin, No. 270, appear the following statements of the report of the International Conference on Silicosis held in Geneva in 1938, with reference to the problem of pneumoconiosis of workers in coal mines:

"(a)  Silicosis occurs among workers in coal mines when the dust to which they are exposed contains free silica. *The minimum proportion of silica necessary to produce the disease is not, in the present state of knowledge determinable.* (Italics ours.)

"(b)  Coal dust alone does not, either in animals or in man produce lesions similar to those of silicosis."

As we have stated our legislature has not defined what are harmful quantities of silicon dioxide dust. The medical profession has not been able to determine what minimum proportion of silica may be breathed by man without harm to himself. That breathing certain amounts of silica over an extended period of time is harmful is self-evident from the effects which produce the disease known as silicosis. In the absence of legislative or medical standards in order to give effect to the Act, the commission must determine what are harmful amounts of silicon dioxide dust from the facts of each individual case. In the instant case there

was sufficient evidence that applicant was suffering from silicosis; that he had worked in coal mines in Utah for over 12 years, 7 of which immediately preceding the date when he ceased to work, were spent in the employment of the plaintiff, Uta-Carbon Coal Co. in its mine; that silica was present in the mine; that applicant first noticed a shortness of breath upon exertion sometime in August or September, 1941, and by April 10, 1942, he had developed a cough and a pain in the chest and other symptoms of silicosis, and from those facts it could have found, as it did, that since April 18, 1942, he "was inflicted with silicosis." In the case of *Krzewinski* v. *Robert Gage Coal Co.*, 304 Mich. 63, 7 N. W. 2d 223, 224, the question that court had to determine was when silicosis was contracted for the purposes of their occupational disease act. It said:

"* * * since silicosis is a latent, chronic process, it becomes important to discover what the legislature meant when it provided that compensation depends on the disease having been contracted within one year prior to disablement. Did it mean that the mere deposit of silica in the lungs was to be the date of contracting? Or did it mean that the date was to be when symptoms appeared and became noticeable? The testimony in this case, * * * medical articles * * * show that the beginnings of silicosis dating from the first deposit are hard to detect and usually take a long period of time before being discovered. Therefore, we are of the opinion that * * * it must be construed as providing that the date of contracting starts when symptoms appear. Otherwise, since it takes so long for the deposits to build up so that symptoms appear, the section of the statute requiring that contracting of the disease must come within one year of the disablement would, in an effective or practical sense, take away all the benefit of the section making the disease compensable."

The commission having found that applicant contracted silicosis on April 18, 1942, added to the facts that there was silica dust in plaintiff's mine and that applicant worked where he breathed this silica dust, we believe there was sufficient grounds for the commission's finding that he was exposed to harmful quantities of silicon dioxide dust for a period of not less than five years in

this state during the ten years immediately preceding his disablement. The fact that he had contracted silicosis while working in plaintiff's mine was sufficient evidence from which the commission could find that applicant was exposed to harmful quantities of silicon dioxide dust.

Under this same set of facts it is apparent that applicant was exposed to harmful quantities of silicon dioxide dust in the employ of the Uta-Carbon Coal Co. for a period of sixty days after July 1, 1941, the effective date of the act, as the undisputed evidence was that he ■ was working in its mine at that date and for practically nine months thereafter. There was no evidence that the conditions under which he was working from July 1, 1941, until April 10, 1942, when he ceased working for the Uta-Carbon Coal Co., were any different than they had been during the entire course of his employment with it. As the court points out in *Ligiecki* v. *E. I. Dupont de Nemours & Co.,* 46 F. Supp. 266, on page 268:

"The generation of harmful dust and vapors creates a hazard present in this industry not common to all other industries. The use of effective means of removal of these dusts and vapors may remove the risk of injury from them to a large extent, but, since the generation of the dusts and vapors continues, the hazards remain."

Sec. 42-1a-27, U. C. A. 1943, provides that:

"The occupational diseases hereinafter defined shall be deemed to arise out of the employment, only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence."

It is well known that silicosis is an occupational disease. As has been said in *Argonaut Min. Co.* v *Industrial Commission,* 21 Cal. App. 2d 942, 79 P. 2d 216, at page 219:

"It [silicosis] is prevalent among employees in mines, potteries, stone and slate factories * * * where the air is permeated with minute particles of stone, quartz, slate, or metal dust which is inhaled to the detriment of the tissues, glands, and lungs. Some men appear to be immune to the disease, but a large proportion of those who are engaged in such pursuits are susceptible to silicosis. The incurring and development of this disease depends somewhat upon the constitution of the employee and upon the conditions under which he works. The course of the disease may be rapid or gradual, sometimes extending over a period of several years before the victim is finally disabled for the performance of manual labor."

There was sufficient evidence that applicant was exposed to harmful quantities of silicon dioxide dust while in the employ of the Uta-Carbon Coal Co. and that he is suffering from silicosis with superimposed tuberculosis. It is not necessary as plaintiff's contend, that evidence should have been introduced to show that whatever exposure he may have had in the Uta-Carbon Coal mine could have produced the disease. Silicosis is not a disease to which workmen would be equally exposed outside the place of employment. It is contracted by the inhaling of silicon dioxide dust over a more or less long period of time. This dust was present in the Uta-Carbon Coal Company's mine, and the fact that applicant contracted silicosis while in its employ is sufficient to show that the dust which he inhaled there was the proximate cause of his injury. In the case of *Harbison-Walker Refractories Co.* v. *Turks et al.,* Ind. App., 39 N. E. 2d 791, the appellant there contended that there was no evidence that the decedent was exposed to the hazards of silicosis while in its employ. The Indiana court said:

"While appellant concedes that the evidence shows the presence of silica where the decedent worked, it insists that there is no evidence

that the quantity was present necessary to cause silicosis according to the standard of the United States Department of Labor.  *  *  *
"There is no requirement that such proof be made. The evidence is ample that silica was present where decedent worked and was there continuously breathed by him over a period of more than ten years in sufficient quantity to cause silicosis and result in his death."

The award of the commission is affirmed.

WOLFE, C. J., and LARSON, McDONOUGH, and MOFFAT, J. J., concur.