## KENNECOTT COPPER CORPORATION (UTAH COPPER DIVISION) v. INDUSTRIAL COMMISSION.

No. 7127.   Decided April 25, 1949.   (205 P. 2d 829.)

452

See 71 C. J., Workmen's Compensation, sec. 357; 58 Am. Jur. 748. Necessity and sufficiency of evidence of occupational disease, note, 73 A. L. R. 488.

*Dickson, Ellis, Parson & McCrea,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *C. N. Ottosen,* of Salt Lake City, for defendant.

McDONOUGH, Justice.

Certiorari to review an award of the Industrial Commission in favor of one John Kucher for total disability under the occupational disease disability compensation law.

John Kucher worked in the employ of plaintiff mining company for some 10½ years, from September 30, 1935, to July 15, 1946. On the latter date he became totally disabled by reason of silicosis complicated by active pulmonary tuberculosis. For three years prior to his employment with

plaintiff, Kucher worked on the P. W. A. Between 1917 and 1932 he was engaged primarily in underground mining work.

The work record of Kucher while in the employ of plaintiff shows that from September 30, 1935, to April 1, 1937, he worked on the tracks in plaintiff's open cut copper mine at Bingham. For about 6 weeks thereafter, until May 20, 1937, he worked as a car repairman in the shops, located in the mine area. He was then transferred to a job as a car repairman outdoors "on the hill," where he worked until January 5, 1938. He was again transferred to a job as a car repairman in the shops, where he worked until August 14, 1938. About the latter date applicant was given a medical examination, including an X-ray of his lungs, which X-ray at the time of the hearing on application for compensation was interpreted to disclose silicosis. He was reassigned in August 1938 to work as a car repairman outdoors "on the hill," at which job he worked thereafter until July 15, 1946, when as stated he became totally disabled. He was hospitalized in Ogden. Some time following the hearings before the Industrial Commission, he died.

Plaintiff seeks to set aside the award made in favor of Kucher, on the ground that the applicant did not establish any right to recovery under the terms of the statutes on occupational disease. Sections 42-1a-13a(3), and 42-1a-14, U. C. A. 1943, reads as follows:

"No compensation shall be paid in case of silicosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide ($SiO_2$) dust for a total period of not less than five years in this state and unless total disability results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed."

"Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, provided that in the case of silicosis the only employer liable shall be the employer in whose employment the employee was last exposed

to harmful quantities of silicon dioxide ($SiO_2$) dust during a period of sixty days or more after the effective date of this act."

The effective date of the act was July 1, 1941. Under the provisions of the quoted statute, in order to support the commission's award, the record, including the inferences reasonably deducible therefrom, must show (1) that the applicant was exposed to harmful quantities of silicon dioxide dust for a five year period between 1936 and 1946, and (2) that at least 60 days of such five year period were subsequent to July 1, 1941, when the act went into effect.

It is plaintiff's contention that there is no competent evidence in the record to support the findings of the commission on either of these elements essential to recovery. Inasmuch as the commission made an award in favor of the applicant, the record must be viewed in the light most favorable to applicant, and if there is competent evidence to sustain the award it must be upheld.

With respect to the first element, since applicant worked for plaintiff during a period of 11 years immediately prior to total disability from silicosis, the only employer, if any, which could be liable, would be plaintiff. There is no contention made that applicant was not exposed to *some* quantities of silicon dioxide dust during the period of 11 years he worked for plaintiff. The basic contention is that there was no exposure to *harmful* quantities. In support of such contention, plaintiff calls attention to the fact that after 1938 applicant worked outdoors "on the hill" as a repairman. Plaintiff contends that no harmful quantities of dust were present where he performed the duties of his employment.

Plaintiff offered in evidence reports and surveys to show that the minimum amount of dust would have to be 5.0 million particles per cubic foot of air (m.p.c.f.) over a period of ten years to induce silicosis; and that the United States Public Health Service Bulletin No. 270 shows that with respect to miners in Utah, no silicosis was found where

the exposure to dust was less than 6.0 m.p.c.f. This report of a survey, together with plaintiff's own survey showing that of 2000 of its employees examined only one was found to have silicosis among those who had no underground mining experience, are claimed to show that applicant could not have contracted silicosis in the employ of plaintiff, for the reason that he was not exposed to any *harmful* quantities of silicon dioxide dust. Plaintiff also offered evidence that recent dust counts made in accordance with the standard procedure adopted by the United States Public Health Service show that car repairmen working outdoors on various levels of the open mine were exposed to a *weighted average* of 1.26 m.p.c.f., with an absolute maximum of 4.5 m.p.c.f.

Surveys frequently tend to show average conditions, but they are not conclusive as to individual cases. What conclusions might be arrived at from a particular survey made by plaintiff on its properties of recent date, is not necessarily an index to what conditions prevailed during previous years. Some of the evidence included the testimony of a safety engineer whose duties are to improve conditions at the mine and to lessen the dangers from dust. His testimony is such that the commission might well have concluded that there was ample opportunity for improvement with respect to dust conditions.

Plaintiff, however, argues that some standards must be used to guide the commission, and that the best available evidence is contained in the report of certain surveys conducted and published as U. S. Public Health Service No. 270. Substantially the same contentions were made in *Uta-Carbon Coal Co.* v. *Industrial Comm.,* 104 Utah 567, 140 P. 2d 649, 651, and we said:

"Our legislature has not seen fit to define what amounts of silicon dioxide dust are to be considered harmful. On page 57 of Public Health Bulletin, No. 270, appear the following statements of the report of the International Conference on Silicosis held in Geneva in 1938, with reference to the problem of pneumoconiosis of workers in coal mines:

" '(a) Silicosis occurs among workers in coal mines when the dust to which they are exposed contains free silica. *The minimum proportion of silica necessary to produce the disease is not, in the present state of knowledge determinable.* (Italics ours.)

" '(b) Coal dust alone does not, either in animals or in man produce lesions similar to those of silicosis.'

"As we have stated our legislature has not defined what are harmful quantities of silicon dioxide dust. The medical profession has not been able to determine what minimum proportion of silica may be breathed by man without harm to himself. That breathing certain amounts of silica over an extended period of time is harmful is self-evident from the effects which produce the disease known as silicosis. In the absence of legislative or medical standards, in order to give effect to the Act, the commission must determine what are harmful amounts of silicon dioxide dust from the facts of each individual case.  *  *  *"

Arguments similar to those advanced in the *Uta-Carbon Coal Co.* case and in this case, were made in *Harbison-Walker Refractories Co.* v. *Turks,* 110 Ind. App. 563, 39 N. E. 2d 791, and in *Harbison-Walker Refractories Co.* v. *Harmon,* 114 Ind. App. 144, 51 N. E. 2d 398. In both cases the contention that some formula must be used in order to make a finding that the employee was exposed to harmful quantities of silicon dioxide dust, was rejected for the reason that the statute does not specify what is a harmful quantity. As stated in the first of the two Indiana cases, 39 N. E. 2d 792:

"The Workmen's Occupational Disease Act is a practical statute having for its purpose the accomplishment of a definite humane purpose. It should be mantled in the spirit of the objective, not shrouded in a haze of over-technical interpretations."

There is ample evidence in this case that from 1935 to 1938, particularly while the applicant was working in the shops, he was exposed to a considerable quantity of silicon dioxide dust, and that under the circumstances and the results, such quantities were harmful to the applicant. There is also evidence that even while he worked on the hill and on different levels of the open mine, he was

exposed to that kind of dust. In fact, there was no other place where he was so exposed during the period of 11 years.

By reason of total disability and hospitalization of applicant, part of the hearing was conducted at the hospital in Ogden. The balance of the hearing was conducted at Salt Lake City with his express consent, although he stated he was unable to leave the hospital. He was not represented by counsel at any of the hearings, nevertheless he presented competent evidence which supports the findings of the presence of silicon dioxide dust and his exposure to harmful quantities of such dust.

For example, at the proceedings at Ogden, he injected remarks with respect to the presence of dust which indicate that he disputed the version of facts presented by plaintiff in such a manner as to warrant a finding that there was considerable dust where he worked, and that the wind was blowing the dust around in the open mine a great deal. A witness for plaintiff admitted that the men working in proximity to applicant got dust on their hats and other clothing, and that the wind blew a great deal of dust around. While plaintiff sought to show that there was no exposure of applicant to harmful quantities of dust, some of the claims of lack of harmful quantities of dust where applicant worked, were refuted or at least rendered questionable by the admissions of plaintiff's own witness in such a manner as to tend to corroborate the testimony of applicant in certain respects.

It is conceded that the ore mined and transported on premises of plaintiff put into the air in some quantities, silicon dioxide dust. Plaintiff sought to show that such dust was not in sufficient quantities to be harmful. It is undisputed that the wind blows a great deal in and around the open pit mine and "on the hill," and that dust accumulates upon the clothing of workmen even while working outdoors. Applicant testified that it was dusty in the shops, especially from dumping ore cars which needed repairs, and likewise

from sweeping the floors. He testified that it was dusty outside where he worked, except in wet weather. While a witness for plaintiff was testifying, applicant injected into the record remarks to the effect that at various times while engaged in his outdoor job he was assigned to repair work on shovels, and that he was exposed to considerable quantities of dust; and also that when the wind was blowing, it was dusty on the tracks. The commission therefore was not arbitrary in finding that applicant was exposed to harmful quantities of silicon dioxide dust for a period of five years during the last ten years, and that such exposure occurred while employed by plaintiff.

Plaintiff also contends that applicant was not disabled from silicosis nor was the condition of applicant aggravated while employed by plaintiff. Plaintiff stresses the possibility that applicant had a non-disabling silicosis condition in 1938 when his lungs were X-rayed by one of its company doctors. There was medical opinion evidence to the effect that the silicosis condition was probably contracted prior to 1935, and that there was no marked progress of the disease thereafter; and that such progress which was evident would have been possible without any further dust exposure. One doctor testified that in his opinion it would require a period of 10 to 15 years to enable such a condition to develop as was disclosed in 1938 by the X-ray. It was admitted that while applicant worked on the P. W. A. projects he was not underground; but it was contended that since applicant worked as an underground miner from 1917 to 1932 it was reasonable to conclude that the silicosis was contracted prior to the time that applicant was employed by plaintiff and that there was insufficient evidence to show that the disease was aggravated during the period of employment by dust conditions on plaintiff's premises.

It is true that one doctor stated that the condition manifested by the 1938 X-ray would require more than 3 years and probably more than 5 years to develop, although the extent of development would depend upon the type of em-

ployee, his general physical condition and the type of dust. The 1938 film was also said to show "almost third degree silicosis."

For 11 years the applicant worked for plaintiff, and at the time he ceased work he became totally disabled by reason of silicosis complicated by tuberculosis. The July, 1946, film definitely showed tuberculosis. With regard to the effects of further exposure to dust it was stated by one doctor that the process once started progresses regardless of the presence of dust; but it was also the opinion of one doctor that

"It could be aggravated by constant irritation from exposure to a certain particle count of dust in the air."

There was definite proof of the presence of dust in the air where applicant worked; and while the plaintiff gave applicant an outside job after the 1938 X-ray was taken, as detailed above, there was sufficient competent evidence that applicant was not only exposed to harmful quantities of silicon dioxide dust for a five year period, but that at least 60 days of such harmful exposure occurred after July 1, 1941, which was the effective date of the act. In view of the circumstances, and the fact that applicant performed his work successfully for over 10 years and left his employment in 1946 in consequence of total disability from silicosis, the commission was not capricious in finding plaintiff liable therefor.

The fact that silicosis might have had it origin in the employ of some previous employer, does not exempt the plaintiff from liability. The law recognizes the fact that disablement comes only after years of continuous exposure in many cases. The statute provides no compensation for the silicosis condition itself, but only for total disability resulting from such malady. The law is premised on the concept that if an employee is accepted into an employment and performs his work successfully for a number of years, and while in such employment he finally

becomes totally disabled from silicosis, the employer in whose employment the disability occurs should not be permitted to exempt himself from liability for total disability by asserting that a silicosis condition arose in some prior employment. The disabled employee might have an impossible burden to fix liability. Therefore the statute makes liable only the *last employer* in which employment the employee was last exposed to harmful quantities of silicon dioxide dust during the period specified in the act.

This is not a case where the employer sought to be held liable assigned the applicant to a place of work where there was no possible exposure to any quantities of such dust. It was admitted that there were varying quantities of such dust on the premises of plaintiff during the entire period of applicant's employment. It was also shown that various individuals react differently to varying amounts of silicon dioxide dust, and that silicosis does not develop at the same rate in all persons. There are different degrees of susceptibility in different types of individuals. The plaintiff attempted to show that the quantities of such dust were at all times insufficient to be harmful to any person, and that the silicosis condition found in applicant in 1938 was contracted prior to the date plaintiff first employed applicant. Plaintiff presented no such proof which would require an award in favor of plaintiff.

The liability of an employer in whose employ an applicant becomes totally disabled from silicosis, is predicated not on having contracted such ailment in his employ, but for exposing such employee to harmful quantities of the dust. There being a period of nearly 11 years of some exposure to such dust, in view of the circumstances, the commission had a valid basis for its findings that the quantities were harmful in view of total disability. The award of the commission is therefore affirmed. Costs to defendant.

PRATT, C. J., and WADE, WOLFE, and LATIMER, JJ., concur.