In the Matter of the Compensation of
James E. Fossum, Deceased,

FOSSUM,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND et al,
*Respondents.*

(Nos. 77-3475, 77-6112, 78-958, 78-959
and 78-957, CA 14961)

629 P2d 857

Allen T. Murphy, Jr., Portland, argued the cause for petitioner. With him on the brief was Richardson, Murphy & Nelson, Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent, State Accident Insurance Fund. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Counsel, State Accident Insurance Fund, Salem.

Margaret H. Leek Leiberan, Portland, argued the cause for respondent Argonaut Insurance Company. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Jerard S. Weigler, Portland, argued the cause for respondent Underwriters Adjusting Co. With him on the brief was Lindsay, Nahstoll, Hart, Neil & Weigler, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a workers' compensation proceeding brought by the widow of a worker who died from asbestos-caused cancer. She seeks reversal of the decision of the Workers' Compensation Board (Board) finding the claim noncompensable. In an earlier opinion we found her claim to be barred by the applicable statute of limitations. *Fossum v. SAIF*, 45 Or App 77, 607 P2d 773 (1980). The Supreme Court disagreed and reversed that decision. 289 Or 777, 619 P2d 233 (1980). Because our prior opinion did not discuss the merits of petitioner's claim, the case was remanded to us to determine whether or not the deceased worker's condition was caused by the conditions of his employment and was therefore compensable. We conclude that it was.

James E. Fossum was an electrical worker. During the early 1940s he worked as an electrician for three different employers in the ship-building industry in Portland. From 1948 to 1967, he had numerous employers, but the majority of the time he worked for W. R. Grasle Company. From December, 1969, to December, 1976, he was employed by Willamette Western. He left work on December 15, 1976; on February 15, 1977, a probable diagnosis was made of mesothelioma, an incurable form of lung cancer caused by asbestos. On March 18, 1977, Fossum filed a claim for workers' compensation with Underwriters Adjusting Company against Willamette Western. The claim was denied. On August 4, 1977, he filed claims with SAIF against Poole 9 mcGonigle, Oregon Shipyards and Kaiser Company, T.R.D., the three shipbuilders. Fossum died on August 5, 1977. His widow filed death benefit claims with SAIF against Poole 9 mcGonigle, Oregon Shipyards, and Kaiser Company, with Argonaut Insurance Company against W. R. Grasle Company, and with Underwriters Adjusting Company against Willamette Western; all the claims were denied.

A hearing was held on July 27, 1978, to determine whether Fossum's death was caused by an occupational disease and, if so, which, if any, of the three carriers was responsible. The referee found, in pertinent part:

"(1) That the employer responsible for Fossum's condition is the last employer where there was some exposure of

a kind contributing to his condition; (2) that his employment at W. R.Grasle Company and at Willamette Western neither caused nor contributed to his condition; (3) that Fossum's death from mesothelioma was caused by his employment in the shipyards in the 1940's; (4) that Kaiser Company, as Fossum's last employer in the shipyards, is the responsible employer; and (5) that SAIF is the responsible carrier."

The referee entered an order affirming all the denials issued on the deceased's claims and affirming all the denials issued on the widow's claims, except for the claim filed with SAIF against Kaiser Company, which was held compensable. SAIF appealed to the Board, which concluded that the claimant had failed to prove either legal or medical causation and reversed the order of the referee.

We turn first to the issue of causation. The referee summarized the testimony of the two medical experts as follows:

"Dr. Miles Edwards, Chief of the Division of Chest Diseases of the University of Oregon Health Sciences Center, testified that mesothelioma is a cancer which is caused by exposure to asbestos. He stated that the disease does not develop generally until 25 to 40 years after the exposure to asbestos and that in no case is the disease known to develop in less than 15 years after exposure. He stated that any recent employment (definitely any employment within 15 years of death and probably any employment within 25-30 years of death) would not have caused Mr. Fossum's mesothelioma. Dr. Edwards testified that it is medically probable that Mr. Fossum acquired the asbestos fibers in 1943 or 1944 while working on the shipyards and that this later led to mesothelioma. He testified that he is absolutely certain that asbestos was the cause of the mesothelioma which caused claimant's death. Dr. Edwards stated that to be a high risk occupation for contracting this disease the occupation must be one where the asbestos is scattered in the air in very small particle form and that studies show that the people who get this desease [sic] were insulation workers or people who worked in the shipyard even though they were not asbestos workers. Dr. Edwards testified that if claimant moved from job to job he could not possibly designate the responsible employer, but that he is relating claimant's disease and death to employment in the shipyards in the 1940's. He stated that to date studies have

not shown any incidence of mesothelioma in workers in occupations which incidentally deal with asbestos * * *.

"Dr. Charles Hine, clinical professor of occupational medicine and toxology at the University of California at San Francisco, testified that he had reviewed the autopsy report, the medical reports, Mr. Fossum's deposition and that he had heard * * * testimony regarding Mr. Fossum's work at Willamette Western. He stated his opinion that * * * [it] is medically probable that Mr. Fossum's death from mesothelioma occurred from occupational exposure. He stated that these tumors appear from 20 to 40 years after exposure and that extensive use of asbestos and lack of care in its dissemination led to exposure of all crafts that worked in yards constructing vessels. He causally related Mr. Fossum's work in the shipyards and his death from mesothelioma. He stated his opinion that in claimant's employment at Willamette Western his exposure to asbestos was so infrequent, of such low intensity and for such a short period that it would not have given rise to this tumor in an indefinite period of time. He stated that at Willamette Western Mr. Fossum was not put at any greater risk of developing mesothelioma than any person present in the hearing room."

■ The referee's summary accurately reflects both doctors' opinions. On *de novo* review, we conclude that the deceased worker's cancerous condition was caused by exposure to asbestos found in the work place. There is no question that Fossum suffered from a type of lung cancer known to be caused by exposure to asbestos. It is also undisputed that he was exposed to asbestos, in varying degrees and forms, in all of the jobs identified above. The doctors' testimony supplies the necessary causal connection between the occupational exposure and the cancer.

■ The question remains as to which of the three carriers is responsible for compensation. The answer to this question depends upon whether the "last injurious exposure" rule applies. That rule was adopted by this court in *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972). In that case we held that, where an occupational disease is caused by a succession of jobs, each of which exposes the claimant to conditions which could cause the disease, then the last employer with risk exposure is liable. *See Bracke v. Baza'r, Inc.,* 51 Or App 627, 626 P2d 918 (1981).

■    Claimant argues that, under *Mathis,* Willamette Western, as the last employer, is responsible for compensation. We disagree. In *Mathis,* we rejected the contention that the last employment must be a "material contributing cause" of the occupational disease. However, we did conclude that the last employer is only liable if the conditions of the last employment were such that they could cause the claimant's occupational disease over some indefinite period of time. As we stated:

> "It goes without stating that, before the last injurious exposure rule can be applied, there must have been some exposure *of a kind contributing to the condition." Mathis v. SAIF, supra,* 10 Or App at 139, quoting from 3 Larson, Workmen's Compensation Law, § 95.21 (1971) (Emphasis supplied); *see also Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980).

We conclude that the last injurious exposure rule, applied to the present case, relieves Willamette Western and Grasle of liability. The medical testimony indicates that recent employment, within the last 15 to 20 years, would not have caused the deceased's mesothelioma. This particular form of cancer does not generally develop until 20 to 40 years after exposure. While it is clear that the deceased was exposed to asbestos at Willamette Western, we are satisfied from the medical evidence that this exposure did not contribute to the cause of his disease in this case and could not have done so.

We agree with the referee's conclusion that Fossum's death from mesothelioma was caused by his employment in the shipyards during the 1940s. His last employer in the shipyards was Kaiser Company, T.R.D; therefore, under the last injurious exposure rule, liability for compensation lies with Kaiser Company. *Mathis v. SAIF, supra.* Claimant contends that State Industrial Accident Commission (SIAC), SAIF's predecessor, was Kaiser's carrier. SAIF, however, denies coverage. Kaiser Company is no longer in existence. and SAIF admits that it has destroyed the records of its predecessor, SIAC. The relevant workers' compensation statute at the time of Fossum's employment with Kaiser was OCLA § 102-1712. It provided, in pertinent part:

> "All persons, firms and corporations engaged as employers in any of the hazardous occupations hereafter

specified shall be subject to the provisions of this act; provided, *however,* that *any such person,* firm or corporation *may be relieved* of certain of the obligations hereby imposed and shall lose the benefits hereby conferred *by filing with the commission written notice of an election not to be subject thereof* in any manner hereinafter specified. * * *" (Emphasis supplied.)

The law required all employers in hazardous occupations to provide workers' compensation benefits. Kaiser Co., T.R.D., was engaged in a hazardous occupation. OCLA § 102-1725(c). Absent evidence to the contrary, we presume that Kaiser complied with the law and provided compensation benefits. *See* ORS 41.360(33). There is no evidence that Kaiser elected not to be covered. SAIF contends that the claimant must prove that Kaiser did not elect to *not* be subject to the Workers' Compensation Act. We disagree. In the posture in which this case now stands, we hold that the claimant has met her burden by showing the statutory scheme concerning hazardous occupations, Kaiser, T.R.D.'s status as a hazardous occupation employer and the destruction by SAIF of any evidence which would have shown Kaiser's election not to be subject to the Act.[1] *See Olds v. Olds,* 88 Or 209, 171 P 1046 (1918); *Walter v. Turtle,* 146 Or 1, 29 P2d 517 (1934). The burden then shifted to SAIF, which has made no showing to the contrary. We find that Kaiser was covered by the Act and that SAIF, as SIAC's successor, is the responsible carrier.

We hold that petitioner's claim is compensable and that SAIF is responsible for compensation. The order of the Board is reversed and that of the referee is reinstated.

Reversed.

---

[1] At oral argument, counsel for SAIF pointed out other lines of inquiry which claimant might have pursued to establish, at least by inference, that Kaiser, T.R.D., was or was not subject to the Act. Such inquiries, including an examination of old lawsuits brought under the Act, would not, however, have established anything conclusively. Only the destroyed records could have done that.