**Becky LUCKAU, In the Matter of Rodney Luckau, Deceased, Petitioner,**

v.

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH; Workers' Compensation Fund; and Broadway Shoe Rebuilders, Respondents.**

No. 910715–CA.

Court of Appeals of Utah.

Oct. 16, 1992.

Edward B. Havas, Salt Lake City, for petitioner.

Richard G. Sumsion, Salt Lake City, for respondents.

Before BENCH, BILLINGS and GREENWOOD, JJ.

OPINION

GREENWOOD, Judge:

Petitioner Becky Luckau appeals the Industrial Commission's denial of occupational disease death benefits. We reverse and remand.

BACKGROUND

Petitioner's husband, Rodney Luckau (decedent), died in 1990 of mesothelioma, a cancer usually caused by asbestos exposure. Petitioner filed a claim with the Industrial Commission alleging that decedent was exposed to injurious amounts of asbestos while employed at Broadway Shoe Rebuilders (Broadway). She sought occupational disease death benefits under the Occupational Disease Disability Act.

Decedent held numerous jobs during his life. Of relevance to this proceeding are his jobs in a boiler room in Colorado, where he removed and installed asbestos pipe lining, and as a sales clerk for Broadway. Consistent with the typical latency period for mesothelioma, decedent was most likely to have contracted the cancer while employed in Colorado and/or by Broadway. He worked in Colorado for fifteen to sixteen months in the early 1960s, and at Broadway for six to nine months in 1964. Petitioner contends that Broadway is liable for occupational disease death benefits under the Last Injurious Exposure Rule, as codified in Utah Code Annotated section 35-2-14 (1988).

A hearing was held before an Administrative Law Judge (ALJ) on May 24, 1991. Petitioner called two witnesses, Kevin Potts and Jeffrey Throckmorton, both of whom had inspected Broadway's premises for asbestos, conducted air sampling tests, and compiled a report indicating that they had found asbestos in the basement and on a pipe in the shop. Petitioner also introduced depositions of her husband, taken before his death, and her husband's doctor.

Respondents also called Potts and Throckmorton, as well as Joe Bollinger, President of Broadway, and Dr. Attilio Renzetti, a mesothelioma expert. Dr. Renzetti testified that in his opinion, decedent's mesothelioma was caused by his exposure to asbestos while working in Colorado, not at Broadway. He agreed, however, that there could have been a cumulative dose effect between the Colorado and Broadway exposures.

In his findings of fact, the ALJ stated that "there is no doubt that [decedent's]

mesothelioma was caused by asbestos exposure," and that his exposure both in Colorado and at Broadway "comport well with the latency period for mesothelia [sic]." The ALJ also determined that an injurious exposure required a "substantial dosage of exposure, and/or duration of exposure." He denied petitioner benefits, however, because he concluded that she had failed to meet her burden of proving that decedent was exposed to injurious amounts of asbestos at Broadway, as required under Utah Code Annotated section 35–2–14 (1988).

Petitioner filed a motion for review with the Board of Review. The Board denied her motion and this appeal followed. On appeal, petitioner argues that the Commission erred in determining that she was not entitled to benefits under section 35–2–14. Specifically, petitioner claims that the ALJ erred in interpreting and in applying the statute.

## STANDARD OF REVIEW

Section 63–46b–16(4) (1988) of the Utah Administrative Procedures Act (UAPA) outlines "the circumstances under which a reviewing court may grant relief from formal agency action." *Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 824 (Utah 1992). "Under [section] 63–46b–16(4)(d), we may grant relief if 'the agency has erroneously interpreted or applied the law.' " *Id.* (quoting Utah Code Ann. § 63–46b–16(4)(d) (1988)).

■ " '[A]bsent a grant of discretion, a correction of error standard is used in reviewing an agency's interpretation or application of a statutory term.' " *Stokes v. Board of Review,* 832 P.2d 56, 58 (Utah App.1992) (quoting *Morton Int'l, Inc. v. Auditing Div.,* 814 P.2d 581, 588 (Utah 1991)). However, where the legislature either expressly or implicitly grants the agency discretion to interpret or apply a statutory term, we review the agency's interpretation or application·under a reasonableness standard. *Anderson,* 839 P.2d at 824 (citing *Morton,* 814 P.2d at 587); *Stokes,* 832 P.2d at 58.

■ Respondents claim the applicable standard of review is an "[i]ntermediate standard of reasonableness and rationality with appropriate deference to the decision of the administrative agency." Petitioner contends that this court should apply a correction of error standard to the ALJ's interpretation of the law and application of the facts to the law, and a substantial evidence test to the ALJ's factual findings. Neither party provides any detailed discussion or analysis. The disparity between these claims, however, demonstrates why "parties would be wise to assist this court in properly determining our standard of review." *Bhatia v. Department of Employment Security,* 834 P.2d 574, 581 (Utah App.1992) (Bench, J., concurring). In appeals under UAPA, it would be helpful for parties to "distinguish between grants of discretion to apply the law and grants of discretion to interpret a statute," *id.,* to specify whether the statute contains an explicit or implicit grant of discretion, *id.,* and to specifically identify the grant of discretion if one is claimed.

■ The Occupational Disease and Disability Act does not expressly grant the Commission discretion to interpret the 1988 Last Injurious Exposure Rule. The Commission has not articulated any sound reason under *Morton* why we should find an implicit grant of discretion. Because we can ascertain the Rule's meaning by applying traditional rules of statutory construction, we find no implicit grant of discretion. *See Morton,* 814 P.2d at 589; *Nucor Corp. v. Utah State Tax Comm'n,* 832 P.2d 1294, 1296–1297 & n. 5 (Utah 1992); *Ferro v. Utah Dep't of Commerce,* 828 P.2d 507, 510 (Utah App.1992). We accordingly apply a correction of error standard in reviewing the Commission's interpretation of this statute.

## STATUTORY INTERPRETATION

Petitioner brought her claim under the Occupational Disease Disability Act which imposes liability upon an employer to compensate the dependents of an employee who dies from an occupational disease.

**814**

Utah Code Ann. § 35–2–13(b) (1988). Section 35–2–13(b) states in pertinent part:

> There is imposed upon every employer a liability for the payment of compensation to the dependents of every employee in cases where death results from an occupational disease.

Section 35–2–14 (1988) contains what is known as the Last Injurious Exposure Rule. It states in pertinent part[1]:

> Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of such disease....

Petitioner claims that in denying her benefits, the ALJ erroneously interpreted the phrase "injuriously exposed to the hazards of such disease" to require a "substantial dosage of exposure, and/or duration of exposure."

The phrase "injuriously exposed to the hazards of such disease" has been variously interpreted. Although it is clear that "there must have been *some* exposure of a kind contributing to the condition, ... once the requirement of some contributing exposure has been met, the question remains: Was this enough of an exposure to be deemed injurious?" 4 Arthur Larson, *Workmen's Compensation Law* § 95.26(a) (1990). Traditionally, courts

> have not gone on past the original finding of some exposure to weigh the relative amount or duration of exposure under various carriers and employers. As long as there was some exposure of a kind which could have caused the disease, the last insurer at risk is liable for

all disability from that disease. Thus, insurers or employers who have been at risk for relatively brief periods have nevertheless been charged with full liability for a condition that could only have developed over a number of years.

*Id.* For example, in *Meyer v. SAIF*, 71 Or.App. 371, 692 P.2d 656 (1984), *review denied*, 299 Or. 203, 700 P.2d 251 (1985), claimant suffered from asbestosis and sought benefits from his last employer, for whom he had worked only six days removing asbestos insulation from pipes. He had been exposed to asbestos throughout his life as a pipe-fitter and plumber for several different employers and had exhibited signs of the disease for over twelve years. Medical evidence showed that his exposure during the six-day employment was not the actual cause of the disease, but the court nevertheless held the employer liable for benefits. The court stated that "the appropriate inquiry under the last injurious exposure rule is not whether the conditions of the last employment actually caused the disease, but whether those conditions were of a kind which could have caused the disease over some indefinite period of time." *Id.* 692 P.2d at 658; *see also, Osteen v. A.C. & S., Inc.*, 209 Neb. 282, 307 N.W.2d 514, 520 (1981) (last of forty employers held liable for claimant's mesothelioma because exposure to asbestos was of type that could have caused the disease had he been exposed for a "long time"); *Union Carbide Corp. v. Industrial Comm'n*, 196 Colo. 56, 581 P.2d 734, 738 (1978) (en banc) (employer for whom employee worked for eight days during which he was exposed to radiation which amounted to one-ten-thou-

---

1. The Last Injurious Exposure Rule, as stated in Utah Code Annotated section 35–2–14 (1988) differs from the version of the rule that is now in effect. The legislature amended section 35–2–14 (1988) and codified it as section 35–2–105 (1991), effective April 29, 1991. The Rule now reads:

> (1) To the extent compensation is payable under this chapter for an occupational disease which arises out of and in the course of an employee's employment for more than one employer, the only employer liable shall be the employer in whose employment the employee was last injuriously exposed to the hazards of the disease if:

> (a) the employee's exposure in the course of employment with that employer was a substantial contributing medical cause of the alleged occupational disease; and
> (b) the employee was employed by the employer for at least 12 consecutive months. (2) Should the conditions of Subsection (1) not be met, liability for disability, death, and medical benefits shall be apportioned between employers based on the involved employers' causal contribution to the occupational disease.

sandth of his total exposure during his mining career was liable for death benefits on the basis that there was sufficient evidence that, had he worked in those conditions for a year, the concentration would have exceeded federal exposure standards); *Wood v. Harry Harmon Insulation*, 511 So.2d 690, 693 (Fla.App.1987), *review denied*, 520 So.2d 584 (Fla.1988) (it is not necessary to prove that the last injurious exposure actually injured claimant, if it was of a kind which over time would be harmful).

Other courts, however, have held that the exposure "must have been of such length or degree that it could have actually caused the disease." Larson, § 95.26(a). *See e.g., Olson v. Federal Am. Partners,* 567 P.2d 710, 713 (Wyo.1977) (claimant denied benefits because she failed to prove a direct causal connection between work conditions and the disease); *Fossum v. SAIF,* 52 Or.App. 769, 629 P.2d 857, 860 (1981) (exposure must be the cause of the disease for employer to be liable under Last Injurious Exposure Rule), *aff'd on other grounds*, 293 Or. 252, 646 P.2d 1337 (1982).

■ Because either definition could be applied to the phrase as used in section 35–2–14, we turn to traditional rules of statutory construction for assistance in determining the legislature's intended meaning. *Osuala v. Aetna Life & Cas.*, 608 P.2d 242 (Utah 1980) describes cardinal rules of statutory construction as follows: "[I]f there is doubt or uncertainty as to the meaning or application of an act, it is appropriate to analyze the act in its entirety, in the light of its objective, and to harmonize its provisions in accordance with the legislative intent and purpose." *Id.* at 243; *see also Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984) (courts should construe parts of an act so as to harmonize with the purpose of the whole act). In interpreting a statute, courts should avoid adding to or deleting from statutory language, unless absolutely necessary to "make it a rational statute." 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.38 (5th ed. 1992); *see*

*Resolution Trust Corp. v. Lightfoot*, 938 F.2d 65, 66–67 (7th Cir.1991).

Neither petitioner nor respondents have provided us with any legislative history or other evidence of legislative intent to guide us in interpreting this statute. However, we should attempt to construe statutory words in accordance with their plain meaning, keeping in mind that the "best indication of legislative intent is the statute's plain language." *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989).

Specific provisions in the Utah Occupational Disease Disability Act demonstrate sound reasoning behind the Utah Supreme Court's statements concerning the broad legislative purpose of the Act. For example, for employees who sustain health injuries arising out of the course of employment, compensation pursuant to the provisions of this act is "the exclusive remedy against the employer," Utah Code Ann. § 35–2–3 (1988), and for dependents, payment under the Act "discharge[s] all other claims thereof," *id.* at § 35–2–32 (1988). Furthermore, the legislature instructed the Commission to determine employer liability in a manner calculated "to ascertain the substantial rights of the parties and to carry out justly the spirit of the Utah Occupational Disease Disability Law." *Id.* at § 35–2–42 (1988). Mindful of the exclusive nature of the employees' remedy and the directive to the Commission, the Utah Supreme Court stated that in order to fulfill the purpose of workers' compensation, "the Act should be liberally construed and applied to provide coverage" and any doubts should be resolved in favor of the applicant. *State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1053 (Utah 1984); *see also McPhie v. Industrial Comm'n*, 567 P.2d 153, 155 (Utah 1977); *USX Corp. v. Industrial Comm'n*, 781 P.2d 883, 886 (Utah App.1989). In dealing specifically with the Occupational Disease Disability Act, the supreme court also stated that "[p]olicy considerations ... dictate that statutes should be liberally construed in favor of an award." *Tisco Intermountain v. Industrial Comm'n*, 744 P.2d 1340, 1343 (Utah 1987).

■ Based upon an interpretation consonant with the Act's objectives, with the plain meaning of the statutory language, and with the majority view, we conclude that the 1988 statute encompasses all situations in which an employee is exposed to material or substances which contribute to the illness from which the employee suffers or which caused the employee's death, in an amount sufficient to have caused or contributed to any degree to that condition. This interpretation of the phrase in question is consistent with the employer's responsibility to provide employees with a safe environment in which to work. Although the statute is ambiguous in some aspects, its plain language does not include the quantitative or temporal requirements added in the ALJ's definition. Therefore, any exposure which did or could have contributed to the condition is sufficient.[2] This view is also consistent with two early Utah Supreme Court cases decided under a version of the Last Injurious Exposure Rule similar to that in section 35–2–14. *Uta–Carbon v. Industrial Comm'n,* 104 Utah 567, 140 P.2d 649, 653 (Utah 1943) ("[I]t is not necessary ... that evidence should have been introduced to show that whatever exposure he may have had in the coal mine could have produced the disease."); *Kennecott Copper Corp. v. Industrial Comm'n,* 115 Utah 451, 205 P.2d 829, 831 (Utah 1949) (surveys tending to show that quantities of silicone dust were not "harmful" did not necessitate such a finding and court affirmed award of benefits to claimant). In *Kennecott,* the court stated that liability is "predicated not on having contracted such ailment in [employer's] employ, but for exposing such employee to harmful quantities of the dust." *Id.* 205 P.2d at 833.

## CONCLUSION

Because the ALJ erred in interpreting the requirements of Utah Code Ann. section 35–2–14 (1988), we remand to the Commission for consideration of the facts in light of the interpretation of the statute established in this opinion. It would be presumptuous for us to apply the law to the facts of this case, that being the Commission's responsibility.

Reversed and remanded.

BILLINGS, J., concurs.

BENCH, Presiding Judge (dissenting):

I respectfully dissent. While I generally agree with the standard set forth, I disagree with the analysis used by the majority. I also believe that the ALJ properly applied the standard set forth and that Luckau will not receive a more favorable outcome on reconsideration. Therefore, I would affirm the Commission's decision.

I write primarily to address the majority's analytical approach to this case. The majority sets forth an expansive collection of legal propositions, but then fails to apply many of them to this case. I join Justice Wolfe in "deplor[ing] the setting out of many abstract propositions of law ... which plague one critically reading an opinion and require endless time to analyze when they do not seem necessary to a decision of the case." *Hess v. Robinson,* 109 Utah 60, 70, 163 P.2d 510, 514 (1945) (Wolfe, J., concurring in the result). Since

---

**2.** We realize that the legislature has now amended the statute to add requirements that the exposure be "a substantial contributing medical cause of the ... disease" and that the employee be employed at least twelve consecutive months by the employer. Utah Code Ann. § 35–2–105 (1991). *See* fn. 1. However, later versions of a statute do not necessarily reveal the intent behind an earlier version. *See* 1A Norman J. Singer, *Sutherland Statutory Construction* § 22.30 (4th ed. 1985) (a statutory amendment "indicates that [the legislature] intended to change the original act by creating a new right or withdrawing an existing one"). We disagree with the dissent's view that the amendment here was merely explanatory. The amendment added new substantive requirements for liability to attach—that the exposure "substantially" contribute to the disease and that employment be for at least twelve months. "Every amendment not expressly characterized as a clarification carries the rebuttable presumption that it is intended to change existing legal rights and liabilities." *State v. Amador,* 804 P.2d 1233, 1234 (Utah App.1991) (citing *Madsen v. Borthick,* 769 P.2d 245, 252 n. 11 (Utah 1988)). We, unlike our colleague in dissent, conclude this amendment was not a clarifying one, but one which substantively changed the act.

the majority does not utilize many of the legal principles it recites, readers are left to guess how they apply. In order to avoid future confusion, the principles cited should have been either used or deleted from the opinion.

## STANDARD OF REVIEW

While the majority has attempted to set forth the standard of review found in *Morton International, Inc. v. State Tax Commission*, 814 P.2d 581, 588–89 (Utah 1991), it has not precisely followed the supreme court's directions. When a petitioner claims that an agency has misinterpreted a statute, the first question to be answered is whether the statute is ambiguous. *Id.* "If the statute is clear and unambiguous, there is no implicit grant of discretion possible because there is no interpretation required by the agency." *Ferro v. Department of Commerce*, 828 P.2d 507, 510 (Utah App. 1992). "Where statutory language is plain and unambiguous, this Court will not look beyond to divine legislative intent." *Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). Rather, "the plain language of the statute must be taken as the expression of the Legislature's intent." *P.I.E. Employees Fed. Credit Union v. Bass*, 759 P.2d 1144, 1151 (1988).

"A statute is ambiguous if it can be understood by reasonably well-informed persons to have different meanings." *Tanner v. Phoenix Ins. Co.*, 799 P.2d 231, 233 (Utah App.1990). The majority in this case seems to hold that Utah Code Ann. § 35–2–14 (hereinafter section 14) is ambiguous because it sets forth two interpretations, or "definitions," of the last injurious exposure rule. It also purportedly utilizes the rule that the entire statute should be considered when interpreting ambiguous statutory language.[1] The majority, however, never identifies the different plausible interpretations of section 14 that render it ambiguous.

Identifying the ambiguous language at issue, and its plausible interpretations, is the threshold question when statutory language does not have a plain meaning. If the majority would attempt to articulate the plausible interpretations of the specific language actually used by the legislature in section 14, rather than focus on general policy considerations, it would find that section 14 is not ambiguous.[2]

## ANALYSIS

### Plain Meaning

The phrase "last injuriously exposed to the hazards of such disease" has only one plausible meaning. It refers to the last time the employee was exposed to the hazards of the disease in a manner that injured the employee. The plain meaning of the term "injuriously exposed" logically requires a showing that the exposure injured the employee by causing or contributing to the employee's disease. The exposure therefore must either be in an amount or over a period of time sufficient to cause or contribute to the disease in order for it to be deemed injurious. "[T]he duration and extent of exposure must have some significance or the plain meaning of the words lose their significance." Larson, *Workmen's Compensation Law*, § 95.26(a). The majority may therefore reach its stan-

1. The majority purports to "analyze the act in its entirety," but it never considers any other provision of the Act. Instead, it quotes *Tisco Intermountain v. Industrial Commission*, 744 P.2d 1340, 1343 (Utah 1987), also a mesothelioma case, for the proposition that "[p]olicy considerations in workers' compensation cases dictate that statutes should be liberally construed in favor of an award." The majority omits the next sentence in *Tisco:* "However, policy considerations have *no* application in the absence of any evidence to support an award, nor can they be used to controvert the clear meaning of the statutory requirements upon which an award *must* be based." *Id.* (emphasis added).

2. Under the analysis set forth in *Morton,* it is improper for this court to embark on a policy quest. If section 14 is ambiguous and we are unable to identify the legislature's policy determinations by using the rules of statutory construction, we must defer to the agency's policy determination as evidenced by its interpretation. 814 P.2d at 589 (we are to assume the legislature intended that the agency apply its expertise to resolve any questions where legislative intent is not discernible).

**818**

dard by simply looking to the plain meaning of the language used by the legislature in section 14.

There is additional plain language in section 14 that makes it clear that the last injurious exposure rule only applies after a causal connection has been otherwise established. Section 14 begins with the following precondition: "When compensation is payable...." As is clear from this language, Luckau must show that compensation is otherwise payable by Broadway for a covered exposure *before* she may invoke the last injurious exposure rule to place *full* liability on Broadway. Section 35-2-27 (hereinafter section 27) of the Act makes it clear that compensation is not payable unless causation is established. It therefore follows, as a matter of logic, that before section 14 may be applied, Luckau must prove that the exposure at Broadway could have directly caused or contributed to the mesothelioma as required by section 27.

### Resolving Ambiguity

Subsequent to the initiation of this matter, but prior to hearing, the legislature amended section 14 by *adding* a clarifying provision clearly describing the degree of injurious exposure required. The amendment provides that in order for the last injurious exposure rule to apply, the employer's exposure must have been "a substantial contributing medical cause of the alleged occupational disease." Utah Code Ann. § 35-2-105 (Supp.1992) (effective April 29, 1991).

If the majority is correct in assuming that section 14 is ambiguous, it fails to properly interpret it in light of the clarifying amendment. Under traditional rules, "[w]hen a statute is amended, the amendment is persuasive evidence of the legislature's intent when it passed the former, unamended statute." *State v. Bishop*, 753

P.2d 439, 486 (Utah 1988). *See also Foil v. Ballinger*, 601 P.2d 144, 150 (Utah 1979) (amendment clarified original legislative intent by adding language explaining when original language is applicable); *Okland Constr. Co. v. Industrial Comm'n*, 520 P.2d 208, 210-11 (Utah 1974) (amendment dealing with "clarification or amplification as to how the law should have been understood" prior to the amendment should be applied retroactively); *State v. Davis*, 787 P.2d 517, 523 (Utah App.1990) (legislature clarified its original intentions by subsequently adding prohibition); *Larson v. Overland Thrift and Loan*, 818 P.2d 1316, 1320 n. 3 (Utah App.1991); *Shelter America Corp. v. Ohio Cas. and Ins. Co.*, 745 P.2d 843, 845 (Utah App.1987). If the majority were to consider the 1991 amendment, there would be no debate as to the legislature's intended standard.[3]

### PREJUDICE

Before we may grant relief from an agency action, we are statutorily required to find that a petitioner would have likely received a more favorable outcome had an alleged error not been made. *Morton*, 814 P.2d at 584 (interpreting Utah Code Ann. § 63-46b-16(4) (1989)). Luckau alleges that the ALJ misinterpreted section 14 by stating that the last injurious exposure rule requires a "substantial dosage of exposure, and/or duration of exposure." The majority remands because it holds that this statement was an erroneous statement of the law. Luckau, however, has not shown how this statement has prejudiced her claim.

A review of the record reveals that despite the apparent indication of a more demanding standard, the ALJ actually applied the very standard set forth today, and found against Luckau. The ALJ expressly found that decedent's death was not covered because any exposure to asbestos suf-

---

**3.** The majority fails to provide any justifiable reason for not applying the clarifying amendment retroactively. It erroneously relies upon the "presumption of change" rule. The presumption of change rule, however, only applies to material changes in the original language, not to mere additions that only add explanatory language. Singer, *Sutherland Statutory Con-*

*struction*, Vol. 1A § 22.30 at 265 (4th ed. 1985). "An amendment of an unambiguous statute indicates a purpose to change the law, whereas *no such purpose* is indicated by the mere fact of an amendment of an *ambiguous provision*." *Id.* at 266 (emphasis added). If the majority finds section 14 to be ambiguous, it clearly errs in relying upon the presumption of change rule.

fered by the decedent at Broadway was not a "conjunctive cause of the decedent's fatal mesothelioma." The ALJ expressly found that decedent's exposure to asbestos at the shop was "only a de minimis exposure, of no more consequence on this 6 to 9 month daily basis, than what we are all exposed to in a non-industrial, ambient air setting."[4] These factual findings have not been challenged and therefore remain undisturbed. Consequently, when the Commission reconsiders the facts in light of the standard identified today, it will necessarily deny benefits.

A further review of the record also reveals that Luckau is not entitled to compensation because she has not satisfied other requirements found in section 27. In particular, there is no showing that the decedent's mesothelioma was "incidental to the character of the business" as required by subsection 27(5). In *Palmer v. Del Webb's High Sierra*, 838 P.2d 435 (Nev.1992), the Nevada Supreme Court held that an employee's lung disease that resulted from exposure to environmental smoke at the casino where the employee worked was not an occupational disease because the disease was not related to the nature or character of the job. The court reasoned that the requirement that the disease-causing conditions be "incidental to the character of the business" makes it "apparent that the legislature intended that there must be a connection between the kind of job and the kind of disease. Mere causation is not enough." *Id.* at 435–436. Luckau has not made any claim, nor presented any evidence, that the nature or character of the shoe repair business creates a risk that shoe repairers will contract mesothelioma. The record is unequivocal that decedent's exposure to asbestos, if any, was caused by the physical structure wherein the shoe repair business was located, not by the character of shoe repair. Since the decedent's alleged exposure to asbestos was purportedly caused by his structural surroundings, and not by the nature or charac-

ter of his occupation, it appears that even if the alleged exposure was a contributing cause, it was not covered under the Act.

It also appears that section 35–2–13(b)(4) of the Act requires that decedent's death occur within three years from the last date on which he actually worked for Broadway in order to be covered. Since decedent passed away more than three years after he worked for Broadway, any claim is apparently barred under the express terms of the Act. *Tisco*, 744 P.2d at 1342.

## CONCLUSION

Under the plain language of the Act, the last injurious exposure rule only applies when the exposure caused by the target employer is shown to have caused or contributed to the disease. The Commission found that the decedent's exposure to asbestos at Broadway was not a contributing cause of the disease. Since Luckau has not made any showing of the likelihood of a different result on remand, the majority errs in reversing.

I would therefore affirm the Commission's decision to deny benefits.

---

4. The last sentence of section 27 explicitly provides that: "No disease or injury to health shall be found compensable where it is of a character to which the general public is commonly exposed."