Argued and submitted July 17, affirmed November 20, 1985

In the Matter of the Compensation of
Herschel R. Pitts (Deceased).

FARMERS INSURANCE GROUP,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(80-03994, 82-05466, 82-00902; CA A34131)

709 P2d 757

Jerald P. Keene, Portland, argued the cause for petitioner. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent State Accident Insurance Fund. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Allen T. Murphy, Jr., Portland, argued the cause for respondent Dolly Pitts. With him on the brief was Richardson & Murphy, Portland.

No appearance by respondents Kaiser Cement and Gypsum and Firtex.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

496

## YOUNG, J.

Farmers Insurance Group (petitioner) seeks review of a Workers' Compensation Board order holding it responsible to respondent Dolly Pitts (claimant) for survivor's benefits related to the death of her husband, Herschel. Herschel died of lung cancer caused in part by his exposure to asbestos while working for respondents Kaiser Cement & Gypsum and its predecessor, Firtex. Petitioner asserts that SAIF did not request board review of an adverse referee's decision within the proper time, that claimant filed her claim too late and, on the merits, that SAIF rather than petitioner is responsible. We affirm.

Herschel began working for Firtex in the 1930's and continued, with a break from 1947 through 1952, until he retired in early 1975. He worked both as a production worker and, in the later years, as a foreman, with responsibility for all of the plant's operations on his shift. The plant used asbestos for much of the period, primarily as an ingredient in an insulating plaster for its retorts, but also as a constituent of some of its products. At one time, the company used large amounts of asbestos while experimenting with new compositions for mineral fiber boards. It apparently stopped using asbestos in the early 1970's when it shut down the retorts. The asbestos came in large bags or sacks, which the workers would open and pour into vats for mixing. The asbestos was dry and produced considerable dust. The workers were supposed to wear respirators but did not always do so; there is no suggestion that others in the vicinity were even expected to protect themselves. The greater part of Herschel's exposure occurred before January 1, 1966, when petitioner replaced SAIF as the insurer, but he had at least minimal exposure after that date.

In early 1980, about five years after his retirement, he developed a persistent cough. His physicians diagnosed his problem as an adenocarcinoma of the right lung; he also had pleural calcifications, which indicate asbestos exposure. That exposure, combined with his smoking, made him sixty times more likely to get lung cancer than a non-exposed non-smoker and five times more likely than a non-exposed smoker. The parties essentially concede that the diseases were work-related. The tumor in his lung was originally inoperable, but

radiation treatments shrank it sufficiently so that in May, 1980, it was possible to remove his right lung. However, by that time the cancer had reached his spine; it reappeared a few months after the lung operation, and he died on November 18, 1980.

■ Claimant filed her claim on November 11, 1981, which was more than 180 days after her husband's death. We first decide whether the failure to file timely is fatal to her claim. ORS 656.807(2) and (5) provide:

> "(2) If the occupational disease results in death, a claim may be filed within 180 days after the date of the death; and the provisions of subsection (1) of this section do not limit the filing of a claim in fatal cases to less than 180 days from the date of death.

> "* * * * *

> "(5) The procedure for processing occupational disease claims shall be the same as provided for accidental injuries under ORS 656.001 to 656.794."

■ The Supreme Court and this court have previously held that ORS 656.807(5) incorporates ORS 656.265(4)(a), which excuses a late filing if "the insurer or self-insured employer has not been prejudiced by failure to receive the notice * * *." *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980); *Robinson v. SAIF,* 69 Or App 534, 686 P2d 1053 (1984); *Gronquist v. SAIF,* 25 Or App 27, 547 P2d 1374 (1976). Petitioner asks us to reconsider this position, pointing out that at the time of the first decisions the statute provided that the procedure "for allowing, denying, processing or closing" occupational disease claims should be the same as that for other claims. It asserts that the removal of the terms other than "processing" eliminated the basis for applying ORS 656.265(4)(a) to excuse the late filing of occupational disease claims. We disagree. The "processing" of a workers' compensation claim includes allowing or denying and closing it; the legislature simply eliminated unnecessary words. *See Hayes-Godt v. Scott Wetzel Services,* 71 Or App 175, 179 n 2, 691 P2d 919 (1984), *rev den* 299 Or 118 (1985). We also decline to apply a different rule to survivor's claims, as petitioner suggests. Finally, we agree with the Board that petitioner did not show prejudice from the late filing in this case.

■     The referee issued his opinion finding SAIF responsible on March 14, 1983. He did not rule on claimant's attorney fees' request at that time. Instead, on the same date, he wrote claimant's and SAIF's attorneys, stating that he would issue a supplemental order on the attorneys fee question and that SAIF's appeal time would run from the date of the supplemental order. He issued the supplemental order on April 5, 1983, but it was not mailed to all parties and their attorneys. On June 1, 1983, the referee issued another order, stating that review would run from that date; this order was properly mailed. SAIF sought Board review on June 3, 1983. The Board held that the referee's letter of March 14 was the functional equivalent of an own motion to reconsider the March 14 order and an order abating it. Thus, the March 14 order was not final until the April 5 order was, and that order was not final until it was properly mailed on June 1. *See Armstrong v. SAIF,* 67 Or App 498, 678 P2d 777 (1984) (Board's order is not final until it is properly mailed). We agree with the Board that SAIF timely requested Board review of the referee's decision.

■■     We turn to the merits. The decisive issue is whether Herschel received an injurious exposure to asbestos after January 1, 1966, when petitioner's coverage began.[1] *Boise Cascade Corp. v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984); *Fossum v. SAIF,* 293 Or 252, 646 P2d 1337 (1982); *Meyer v.SAIF,* 71 Or App 371, 692 P2d 656 (1984), *rev den* 299 Or 203 (1985). Although the evidence is not completely clear, we find that the exposure to asbestos continued after that date, although at a lower level than it had been some years previously. Dr. Lawyer, a lung specialist, testified that exposure ten or more years before a diagnosis of lung cancer could contribute to the increased risk of cancer. He estimated that the post-1966 exposure may have contributed five to seven percent of the increased risk. Although Lawyer assumed that the post-1966 exposure was much higher than we find it to have been, that exposure was not negligible. Lawyer testified that there are no data showing a threshold below which exposure is harmless. We therefore find that Herschel's exposure when Farmers was on the risk was in fact an injurious exposure and that, under the last injurious exposure

---

[1] Kaiser became self-insured on January 1, 1974. There is no evidence that it used asbestos in this plant after that date.

rule, petitioner is responsible for the claim. *See FMC Corp. v. Liberty Mutual Ins. Co.,* 70 Or App 370, 374, 689 P2d 1046 (1984); *modified* 73 Or App 223, 698 P2d 551, *rev den* 299 Or 203 (1985).

Affirmed.