Argued and submitted January 13, affirmed October 24, 1984, reconsideration allowed April 17 (see 73 Or App 223, 698 P2d 551, (1985)), petition for review denied May 29, 1985 (299 Or 203)

In the Matter of the Compensation of
Edward J. LaRoque, Claimant.

## FMC CORPORATION,
*Petitioner,*

*v.*

## LIBERTY MUTUAL INSURANCE COMPANY et al,
*Respondents.*

(81-11384, 81-11347; CA A28601)

689 P2d 1046

Mildred J. Carmack, Portland, argued the cause for petitioner. With her on the brief were Dennis S. Reese and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Keith D. Skelton, Portland, argued the cause and filed the brief for respondent Liberty Mutual Insurance Company.

Robert K. Udziela, Portland, waived appearance for respondent Ilah LaRoque, beneficiary of Edward J. LaRoque, deceased.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

FMC Corporation (FMC) appeals a decision of the Workers' Compensation Board, which held that FMC, in its self-insured capacity, and not its former carrier, Liberty Mutual Insurance Company, was responsible for claimant's asbestos-related cancer condition. We affirm.

Claimant was employed by FMC and by its predecessor, Gunderson Brothers, from 1957 until his retirement in 1978. From 1967 to October 1, 1975, Liberty Mutual was FMC's compensation insurance carrier. Thereafter, FMC was self-insured. Claimant first sought medical attention in November, 1981, because of symptoms he had suffered for a period of about six months. Dr. Lawyer ultimately diagnosed squamous-cell lung cancer related to asbestos. It is undisputed that claimant's cancer is causally related to his employment. The sole issue is whether FMC's carrier, Liberty Mutual, or FMC in its self-insured capacity, is responsible for claimant's occupational disease.

Dr. Lawyer is the only physician to give an opinion as to the time frame within which claimant's cancer was caused. He testified that exposure subsequent to 1972 "would be a very minimal increase in risk and certainly substantially less in terms of increased risk than his exposures prior to 1972," and that from 1972 through 1976, the increased risk from exposure gradually diminished. Subsequent to 1976, any exposure probably would not have contributed to any detectable or demonstrable increased risk. The doctor stated that the possibility that any exposure after October, 1975 (when FMC became self-insured), contributed to the risk of claimant's cancer was minimal, close to zero.

FMC contends that where, as here, claimant's interests are protected because all potentially liable employers are parties, responsibility as between those employers should be resolved by determining which employer is more likely to have caused claimant's occupational disease. No Oregon case has decided that question, although dicta in *Fossum v. SAIF,* 293 Or 252, 646 P2d 1337 (1982), and *Boise Cascade Corp. v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984), have touched on the problem. Both of those cases recognize that the last injurious exposure rule operates arbitrarily in favor of a claimant to impose liability on the last employer where

working conditions *could* have caused the worker's occupational disease, regardless of whether the disease was, in fact, caused by the worker's exposure to those conditions.

In *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), the claimant sought compensation for disability caused by an occupational disease. Although she joined all of her employers where working conditions could have caused the disease, her claim against the last employer was not timely. She succeeded in proving that her work exposure at her first employer was the cause in fact of her disease, and, by doing so, prevailed over that employer's contention that, under the last injurious exposure rule, liability to the claimant was shifted to the last employer. In *Fossum v. SAIF, supra,* decided the same day as *Bracke,* the question was which of several "potentially causal employers" was liable for the claimant's compensable occupational disease. In resolving that question, the court applied the last injurious exposure rule in the same manner as it is applied when a claimant relies on it to establish compensability. The court said:

> "* * * In applying the last injurious exposure rule to claims for occupational disease, however, the issue is not which employment actually caused the disease, but which employment involved *conditions* which *could* have caused it. If conditions of exposure at Grasle could have caused the disease, for example, the exposure would have been prior to the 20-year minimum period for disease development and Grasle would have been liable as potentially causative under the last injurious exposure rule. The Court of Appeals apparently excluded the Grasle employment because it was not an actual cause. The correct analysis under the last injurious exposure rule, however, is that Grasle is not liable because there is no evidence of exposure at Grasle to conditions which could have caused the disease. * * *" 293 Or at 256.

In a footnote, the court stated that

> "* * * it is arguable that a defense of actual impossibility should be allowed to reduce the otherwise arbitrary operation of the last injurious exposure rule. *Cf., Bracke,* n 5. * * *" 293 Or at 256 n 1.

The difference between *Bracke* and *Fossum* is that in *Bracke* the claimant did not rely on the last injurious exposure rule; instead, she proved that her disease was caused by work exposure at the first employer. The court pointed out that to

allow that employer to rely on the rule as a defense to defeat the very interests of a claimant that the rule is designed to protect would be questionable where the claimant has proven actual causation. 293 Or at 250 n 5. In *Fossum,* as here, the claimant relied on the rule, and the question was whether there was evidence of exposure to conditions that could have caused the disease. The rationale in *Fossum* appears to be that if it is shown that conditions at a given employer could not *possibly* have caused the disease, that employer would have a defense.

In the last of the recent series of cases involving the rule, *Boise Cascade Corp. v. Starbuck, supra,* the court said:

> "In some cases, a worker might assert a disability claim against two employers and establish the claim against the later employer by application of the last injurious exposure rule. That would not prevent the later employer from proving that the earlier employment was the *sole* cause in fact of the disability, in which event the earlier employer would be liable to the worker. But, as *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), makes clear, the worker is not compelled to invoke the rule. The worker always has the option of proving that an earlier employment caused the disability." 296 Or at 244 n 3. (Emphasis supplied.)

Although the precise question presented here has not been decided squarely, we think that enough has been said in the cases cited to suggest strongly that in order for FMC, as the last employer where conditions existed that *could* have caused the disease, to shift responsibility to an earlier employer where working conditions could have caused the disease, it must establish that the conditions at the earlier employer were the *sole* cause or that it was *impossible* for conditions at FMC's plant to have caused the disease.

Because FMC has not met either burden, although it came very close to doing so, it is responsible. Dr. Lawyer testified that he could not say that it was impossible for claimant's employment at FMC, while it was self-insured, to have contributed to claimant's risk of cancer. He did say that there was only a minimal increase in risk from that employment. Because FMC during the period in question exposed claimant to conditions that could have caused his cancer,

actual causation is not impossible. Therefore, FMC is responsible under the last injurious exposure rule for claimant's disability.

Affirmed.