Argued and submitted August 18, 1994; resubmitted In Banc May 3, reversed and
remanded for reconsideration June 21, reconsideration allowed by opinion
November 22, 1995
See 138 Or App 9 (1995)

In the Matter of the Compensation of
William A. Strametz, Deceased, Claimant.

The BENEFICIARIES OF THE ESTATE OF
WILLIAM A. STRAMETZ, Deceased, Claimant,
*Petitioner,*

*v.*

SPECTRUM MOTORWERKS, INC.,
Spectrum Motorwerks, Ltd.,
and SAIF Corporation,
*Respondents.*

(WCB 91-17385, 91-10418; CA A80582)

897 P2d 335

Kevin Keaney argued the cause for petitioner. On the brief were Susan Frank and Pozzi, Wilson & Atchison.

Darren L. Otto, argued the cause for respondents Spectrum Motorwerks, Ltd. and SAIF Corporation. With him on the brief was Scheminske & Lyons.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondents Spectrum Motorwerks, Inc. and SAIF Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

RIGGS, J.

Deits, J., dissenting.
Edmonds, J., dissenting.

## RIGGS, J.

Claimant[1] seeks review of a final order of the Workers' Compensation Board affirming employer's denial of his claim. He argues that the Board misinterpreted the last injurious exposure rule. We reverse and remand for reconsideration.

At the time of the hearing in 1992, claimant was a 43-year-old auto mechanic suffering from mesothelioma, a cancer of the chest cavity. The only known cause of mesothelioma is asbestos. Claimant had served in the Navy from 1963 to 1968, where he was exposed to asbestos. After his discharge, he worked as an auto mechanic for 24 years but did not begin working in Oregon until 1984. There is evidence that claimant was exposed to asbestos as an auto mechanic. In 1990, while working for Spectrum Motorwerks, Ltd., claimant sought treatment for chest pains, which were later diagnosed as symptoms of his mesothelioma.

Claimant filed a claim against his Oregon employers, and settled with all of them except Spectrum Motorwerks, Inc., (SMI) and Spectrum Motorwerks, Ltd. (SML).[2] Both employers denied the claim and claimant requested a hearing. Dr. Dobrow, claimant's treating physician and the only medical witness to testify regarding causation, testified that mesothelioma has a minimum latency period of 10 years. The Board found that the asbestos exposure that caused the mesothelioma must have occurred before 1980. That led the Board to conclude that it was impossible for any Oregon

---

[1] William A. Strametz originally filed the claim at issue in this case. He pursued his claim through the hearing before the referee and before the Board on review. William Strametz has since died. The beneficiaries of his estate are allowed to proceed with his claim under ORS 656.218(3), which provides:

"If the worker has filed a request for a hearing pursuant to ORS 656.283 and death occurs prior to the final disposition of the request, the persons described in subsection (5) of this section shall be entitled to pursue the matter to final determination of all issues presented by the request for hearing."

Thus, although we use the term claimant in referring to Strametz, it is for ease of reference. The actual claimants are the beneficiaries of his estate.

[2] SMI was an Oregon business formed by claimant and his wife in the mid 1980's. In July 1988, SMI became insured by SAIF, but the insurance did not provide coverage to claimant because of his status as a partner in SMI. *See* ORS 656.027(8). In July 1989, claimant and his wife sold the business and it was renamed SML. Claimant continued to work at SML as a subject employee. SML was later declared to be a noncomplying employer.

employment to have caused claimant's mesothelioma and the Board affirmed employer's denial. We review for errors of law, ORS 656.298(6); ORS 183.482(8)(a), and reverse.

■■     In this case, both responsibility and compensability are at issue. In order to establish that his mesothelioma is an occupational disease, claimant must show that it arose "out of and in the course of employment" and was "caused by substances or activities to which [he was] not ordinarily subjected or exposed other than during a period of regular actual employment * * *." ORS 656.802(1). In other words, he must show that work was the major contributing cause of his disease. *Runft v. SAIF*, 303 Or 493, 498, 739 P2d 12 (1987); *Bennett v. Liberty Northwest Ins. Corp.*, 128 Or App 71, 74, 875 P2d 1176 (1994). In determining whether a claimant's occupational disease is work-related, the Board should consider all employment exposure, including out-of-state employment exposure. *Silveira v. Larch Enterprises*, 133 Or App 297, 303, 891 P2d 697 (1995). Here, the evidence as to causation indicates that claimant's lifetime work-related exposure to asbestos caused his mesothelioma.

■     The employers contend that, because of the latency period of mesothelioma, they could not actually have caused claimant's condition and the claim is not compensable as to them. When a claimant has been exposed to the disease-causing substance at more than one employment, questions naturally arise as to the nature and degree of exposure at each employment and how they might bear on the compensability of the claim. The Supreme Court explained the problem in *Runft*, 303 Or at 499:

"[O]ccupational diseases * * * often develop several decades after first exposure to the disease-causing substance. Although it may be relatively simple to identify the employments at which the claimant was or could have been exposed, it will often be difficult or impossible to establish the nature and degree of the exposure. Similarly, although the relationship between a disease and exposure to a substance may be well established, it will often be difficult to state with sufficient medical probability the degree to which, if any, a particular exposure contributed to the development of the disease."

To alleviate that problem, the courts have adopted the last injurious exposure rule. Under that rule, if a claimant

> "proves that a disease was triggered at one time, claimant has carried his burden of proof by establishing that the employer on the risk at the time disability occurred could have caused it, even though previous employers provided conditions which could have caused it, and the rule relieves the claimant of any burden of proving actual causation." *Bracke v. Baza'r*, 293 Or 239, 248-49, 646 P2d 1330 (1982).

In *Runft*, the Supreme Court said:

> "The claimant is required to prove only that the disease was caused by employment-related exposure; the claimant is not required to prove that exposure at a particular employer's workplace caused the disease. *Whether employment at any one workplace was the actual cause of the disease is irrelevant under the rule.*" 303 Or at 500. (Emphasis supplied.)

Thus, it is immaterial for purposes of establishing the compensability of the claim, that the employers here, because of the latency period of mesothelioma, were not the actual cause of claimant's disease. All claimant must show to establish a compensable claim is that conditions at the Oregon employer were of the type that could have caused the disease. *Accord Bracke*, 293 Or at 248-49; *Fossum v. SAIF*, 293 Or 252, 646 P2d 1337 (1982); *Meyer v. SAIF*, 71 Or App 371, 692 P2d 656 (1984), *rev den* 299 Or 203 (1985); *but see FMC Corp. v. Liberty Mutual Ins. Co*, 70 Or App 370, 689 P2d 1046 (1984), *on recon* 73 Or App 223, 698 P2d 551, *rev den* 299 Or 203 (1985).

Employers next contend that, because of the latency period of mesothelioma, conditions of employment at their workplaces could not have contributed to claimant's disease. Therefore, they argue, and the dissent[3] agrees, they cannot be found responsible for claimant's occupational disease. The

---

[3] There are two dissents to this opinion. Judge Deits dissents for the same reasons she dissented in *Silveira v. Larch Enterprises*, 133 Or App 297, 891 P2d 697 (1995). Judge Edmonds dissents for fundamentally different reasons that were not at issue in *Silvera*. Judge Deits' concerns were answered in the majority's opinion in *Silveira*. Thus, when we refer to the dissent in this opinion, we are referring solely to Judge Edmonds' dissent.

Supreme Court rejected this very argument in *Fossum*. *Fossum* also involved a claimant with mesothelioma. The claimant had worked for three shipbuilders from the early 1940's to 1948, for W.R. Grasle from 1948 to 1967 and for Willamette Western from 1969 to 1976. In 1977 the claimant died and his widow filed a claim against all the employers. The Board found that the claimant had not proved actual causation against any one employer and held that the claim was not compensable. We reversed, holding that:

> "This particular form of cancer does not generally develop until 20 to 40 years after exposure. While it is clear that the deceased was exposed to asbestos at Willamette Western, we are satisfied from the medical evidence that this exposure did not contribute to the cause of his disease in this case and could not have done so."

*Fossum v. SAIF*, 52 Or App 769, 774, 629 P2d 857 (1981), *aff'd* 293 Or 252 (1982). The Supreme Court affirmed this court, "but on different reasoning." It first noted that conditions at Willamette Western did not involve exposure to asbestos, then stated:

> "*The Court of Appeals apparently excluded the [Willamette Western] employment because it was not an actual cause. The correct analysis under the last injurious exposure rule, however, is that [Willamette Western] is not liable because there is no evidence of exposure at [Willamette Western] to conditions which could have caused the disease.*" 293 Or at 256 (emphasis supplied).

At that point, the Supreme Court included the following footnote:

> "The employment at Willamette Western could not have been an actual cause of the disease because it was during the 20-year period before which actual causation must have occurred. *Had it been proved and found that the conditions of exposure at Willamette Western were of a kind which could have caused the disease, then under the last injurious exposure rule as described by Larson, Willamette Western would be liable even though that employment could not have been the actual cause.*" 293 Or at 256 n 1 (emphasis supplied).

The present case is almost identical to the hypothetical posed by the court in the footnote in *Fossum*.

We demonstrated our understanding of *Fossum's* rejection of employer's and the dissent's analysis in *Meyer*. In *Meyer*, the claimant sought review of a Board order upholding SAIF"s denial of his claim for asbestosis. SAIF had denied responsibility in *Meyer* for the same reason that SAIF denies it here: the medical evidence indicated that the exposure did not cause the disease. The doctor in *Meyer* testified that "[i]n my opinion, that particular exposure would have nothing to do with his current condition." We stated:

> "That the 1978 exposure was not the actual cause of claimant's present condition does not absolve SAIF from responsibility, for the appropriate inquiry under the last injurious exposure rule is not whether the conditions of the last employment actually caused the disease, but whether those conditions were of a kind which could have caused the disease over some indefinite period of time. *Mathis v. SAIF*, 10 Or App 139, 499 P2d 1331 (1972); *see Fossum v. SAIF*, 293 Or 252, 256, n 1, 646 P2d 1337 (1982)."

The dissent attempts to distinguish *Meyer* by saying "[h]ere, decedent died before any potentially hazardous work conditions with employer could have caused other tumors." 135 Or App at 83. The dissent is correct, but that does not distinguish *Meyer*. In *Meyer*, there was no doubt that the work conditions at the employer did not and could not have caused the claimant's disease. The issue was whether the conditions, if exposure was continued over some time, could cause the disease. Here, as in *Meyer*, the testimony clearly indicates that the conditions could cause the diseases from which claimant suffers. In this case, Dr. Dobrow, plaintiff's oncologist, testified as follows:

> "Q. I want you to assume, and this is probably something that will never happen, but assume that [claimant] doesn't die from the tumor that he has now, this mesothelioma tumor that he has now.
>
> "You're not telling us that the exposure that he's had in April, May, June and July of 1989 could not cause a tumor in the future?
>
> "A. *No, I'm not saying that — that — that they could not cause a future tumor.*
>
> "* * * * *
>
> "Q. Assuming that there was exposure then those, in your opinion, are potentially harmful exposures to [claimant]? ·

"A. *After a sufficient incubation period, yes.*

"* * * * *

"Q. You can tell us that potentially this exposure, if it's — if it occurred between April and June or July of 1989, was at least potentially causative, potentially harmful to [claimant]?

"A. *Potentially at some future date*, but not dealing with this present tumor." (Emphasis supplied.)

Dr. Dobrow's testimony clearly indicates his belief that, given "a sufficient incubation period," or, as the dissent might put it, "an indefinite period of time," claimant's exposure could, in fact, have caused his disease.

■    If a claimant proves that there was Oregon employment with "conditions of exposure * * * of a kind which could have caused the disease," then the last employer with those conditions will be assigned responsibility under the last injurious exposure rule. Neither the Board nor the referee reached that question in this case, because they mistakenly determined that, because of the latency period, neither SML nor SMI could have been the actual cause of claimant's disease.

■    We recognize that our application of the last injurious exposure rule in this fashion leads to an arbitrary and counter-intuitive result. Nevertheless, since the rule's inception, the courts, for appropriate policy reasons, have accepted its arbitrary nature. *See Inkley v. Forest Fiber Products Co.*, 288 Or 337, 345, 605 P2d 1175 (1980); *Bracke*, 293 Or at 248; 4 Larson, *Worker's Compensation Law* 17-173, § 95.24 (1994). As the Supreme Court has said:

"[T]he rule can be extremely arbitrary in a particular case, but this arbitrariness is mitigated in the long run as responsibility is spread proportionately among employers by operation of the law of averages." *Runft*, 303 Or at 500.

The reason for the rule lies not in the achievement of individualized justice, but rather in its utility in spreading liability fairly among employers by the law of averages and in reducing litigation. *Bracke*, 293 Or at 248.

The legislature generally has accepted the arbitrary nature of the last injurious exposure rule, except where it has

decided to change it. As the dissent correctly notes, the legislature recently amended ORS 656.308(1) to read as follows:

"When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable medical services and disability involving the same condition shall be processed as a new injury claim by the subsequent employer." ORS 656.308(1).

The new language "makes it more difficult to transfer responsibility for a condition or disability to a subsequent employer." *SAIF v. Drews*, 318 Or 1, 860 P2d 254 (1993). The effect of that amendment was to overturn some aspects of the last injurious exposure rule as developed in *Runft, Boise Cascade Corp.* and *Bracke. Drews,* 318 Or at 7 n 3. However, the amendment had no effect on the last injurious exposure rule in an initial claim context. *Bennett,* 128 Or App at 75 n 1. The 1991 amendments modified one particular application of the last injurious exposure rule, but left most of the rule intact. The dissent does not claim that the amendments changed the last injurious exposure rule enunciated in *Meyer* and *Fossum*. Instead, it attempts to assess the legislature's general intent. 135 Or App at 84. A more plausible reading of the effect of the 1991 amendments is that the legislature had the opportunity to amend the operation of the rule in an initial claims context, but chose not to. *Cf. Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 597-98, 581 P2d 50 (1978) (amendatory acts do not change the meaning of preexisting language further than is expressly declared or necessarily implied).

The basic effect of the rule is to create a risk pool of all employers whose workplaces have conditions that could cause the disease. As the Supreme Court explained in *Bracke*:

"[The last injurious exposure rule] is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by operation of the law of averages. * * * [Employers may require consistent application of the rule] so as to assure that they are not assigned disproportionate shares of liability relative to other

employers who provide working conditions which generate similar risk." 293 Or at 249-50.

The dissent demonstrates a fundamental misunderstanding of the last injurious exposure rule when it speaks of the rule creating "a risk pool of those employers of the claimant who could have actually contributed to the cause of the claimant's disease." 135 Or App at 86. To speak of "the law of averages" spreading liability proportionately only "among the employers who exposed the claimant to similar risks" makes no sense. Under the last injurious exposure rule, only one of a particular claimant's employers is found liable and all other employers have no liability. Under the dissent's concept of the risk-pool, there is no "spreading of liability." The dissent apparently recognizes the weakness of its artificial "risk pool" construct and posits an alternative reason why the correct conception of the risk pool is still unfair. 135 Or App at 86 n 2. However, that argument is the same one that Judge Deits makes in her dissent here and in *Silveira*. We see no reason to revisit our earlier decision.

The dissent later castigates the majority for "empower[ing] the imposition of responsibility on an innocent employer" and says that the net result makes

"an Oregon employer responsible for a disease that was like a time bomb in decedent before he ever came to work in Oregon and to which the Oregon employer did not contribute or cause. That's not fair!"

The dissent might have a point, if employers held liable under the last injurious exposure rule were truly innocent. However, the employers subject to liability under the rule are only those with harmful working conditions that could cause the disease. Liability attaches to an Oregon employer only if it is creating its own time bombs.

Finally, the dissent argues that:

"There is nothing in the Workers' Compensation Act to suggest that the legislature ever envisioned that an Oregon employer could be responsible for out-of-state employment conditions based on the law of averages among employers world-wide." 135 Or App at 87.

The dissent is correct, but we note that there is also nothing in the Workers' Compensation Act to suggest that the legislature ever envisioned that an Oregon worker with an occupational disease caused entirely by his working conditions could go without compensation. In the light of the long-standing policy that the Workers' Compensation Act is to be liberally construed for the benefit of the worker, *Fossum v. SAIF*, 289 Or 787, 805, 619 P2d 233 (1980); *Liberty Northwest Ins. Corp. v. Short*, 102 Or App 495, 499, 795 P2d 118 (1990); *Holden v. Willamette Industries*, 28 Or App 613, 618, 560 P2d 298 (1977), and the fact that the legislature has not specifically addressed this question, we fail to understand the dissent's strained attempts to ignore controlling precedent.[4]

The last injurious exposure rule requires that this case be remanded to the Board for consideration of whether SMI or SML are responsible for the claim because conditions at those employments were of a kind that could have caused the disease.

Reversed and remanded for reconsideration.

**DEITS, P. J.,** dissenting.

For the reasons I discuss in my dissenting opinion in *Silveira v. Larch Enterprises*, 133 Or App 297, 891 P2d 697 (1995), I believe that the inquiry into the compensability of claimant's disease in this case must be limited to his Oregon employment. Because the Board's finding that claimant's work exposure while employed by any Oregon employer could not have contributed to his disease is supported by substantial evidence, I would agree with the Board that claimant's condition is not compensable in Oregon. Accordingly, I dissent.

**EDMONDS, J.,** dissenting.

On the basis of the judicially-created "last injurious exposure rule," the majority holds employer responsible for

---

[4] We note that we are not the first state to come to this conclusion and also note what the Nebraska Supreme Court has said:

"[E]ven though liability imposed under this rule can have a harsh result [in a particular case], there will be a spreading of the risk when the total picture of asbestos litigation is considered on a nationwide basis." *Osteen v. A.C. & S., Inc.*, 209 Neb 282, 307 NW 2d 514 (1981).

the decedent's occupational disease when the medical evidence is uncontroverted that it was medically impossible for the exposure to asbestos at employer's workplace to have actually contributed to the cause of decedent's disease. The majority's application of the rule to the facts of this case is misplaced, and, for reasons that will become apparent, works an unjust result on employer.

## I.   IT IS MEDICALLY IMPOSSIBLE FOR EMPLOYER'S WORK ENVIRONMENT TO HAVE CONTRIBUTED TO THE CAUSE OF THE DECEDENT'S CANCER.

The Board held that claimant's work exposure while employed by any Oregon employer could not have contributed to the causation of the mesothelioma tumor that resulted in the worker's death. The decedent worked as an auto mechanic for 24 years before his death. During that time, he was exposed to asbestos through his work on brake linings and clutch pads. He was also exposed to asbestos while in the Navy from 1963 to 1968. The Board found

"Doctor Dobrow, oncologist, opined that claimant's lifetime exposure to asbestos caused the mesothelioma. Dr. Dobrow explained, however, that there is generally a latency period of 30 to 40 years between the time of asbestos exposure to the onset of mesothelioma. Based on his research and experience, Dr. Dobrow added that he knew of no cases in which the latency period was less than 10 years.

"Based on claimant's history of chest pains, Dr. Dobrow opined that the mesothelioma was in place as early as March 1990. Therefore, based on Dr. Dobrow's opinion, we find that the asbestos exposure causing the mesothelioma must have occurred by March 1980, or 10 years prior to onset.

"The record shows that claimant was not employed by an Oregon employer on or before March 1980. Rather, prior to that time, claimant had been in the Navy and had been employed as a mechanic in California and Florida. Claimant was not employed in Oregon until 1984.

"Based on the medical record, each and every potentially causal Oregon employment has demonstrated that it was impossible for them, individually or as a group, to have contributed to the causation of this condition. * * *

"Based on Dr. Dobrow's opinion that there is a 10-year latency period prior to the onset of mesothelioma, we find

that claimant's work exposure while employed by any Oregon employer could not have contributed to the causation of the mesothelioma. Accordingly, claimant's condition is not compensable." (Citation omitted.)

There is substantial evidence to support the Board's findings. Strametz died in 1994, subsequent to the Board's order. Because, based on the medical evidence, there is a minimum period of 10 years that must elapse after the date of exposure before an employer's work environment could contribute to decedent's disease, it was medically impossible for the decedent's Oregon employment to have contributed to his disability. Nevertheless, the majority reverses the Board's decision and makes employer responsible for his occupational disease claim based on an application of the "last injurious exposure rule."

## II.  THE CASES RELIED ON BY THE MAJORITY DO NOT DECIDE WHETHER THE APPLICATION OF THE LAST INJURIOUS EXPOSURE RULE IS APPLICABLE TO THE FACTS OF THIS CASE.

Under the last injurious exposure rule, "the last employer who materially contributes to a worker's disabling condition is liable for compensation for the entire cumulative disability." *Bracke v. Baza'r*, 293 Or 239, 244, 646 P2d 1330 (1982). The majority applies the rule to this case because of language in footnote 1 in *Fossum v. SAIF*, 293 Or 252, 646 P2d 1337 (1982), even though employer could not have contributed to the decedent's condition. The footnote in its entirety says:

"The employment at Willamette Western could not have been an actual cause of the disease because it was during the 20-year period before which actual causation must have occurred. Had it been proved and found that the conditions of exposure at Willamette Western were of a kind which could have caused the disease, then under the last injurious exposure rule as described by Larson, Willamette Western would be liable even though that employment could not have been the actual cause. *See* 4 Larson, Workmen's Compensation Law § 95.21, *but see Bracke*, [293 Or at 250 n 5]. Where, as here, claimant's interests are protected because all potentially causal employers are parties, it is arguable that a defense of actual impossibility should be allowed to reduce

the otherwise arbitrary operation of the last injurious exposure rule. *Cf.* [*Id.*] Because there is no evidence of potentially causative exposure at Willamette Western or Grasle, however, we need not decide this issue." 293 Or at 256 n 1.

To put the footnote on which the majority relies in proper context, it is necessary to understand the facts in *Fossum*. Like this case, *Fossum* was a workers' compensation claim brought by the widow of a worker who died from mesothelioma. Fossum was an electrical worker who had worked for three different shipbuilders in the early 1940's. From 1948 to 1967, he worked primarily for the W. R. Grasle Company. From 1969 to 1976, he worked for an employer named Willamette Western. Shortly after leaving Willamette Western, the decedent was diagnosed as having mesothelioma, and he died in 1977. According to the medical testimony in that case, mesothelioma does not develop until 20 to 40 years after the exposure to asbestos. *Fossum*, 293 Or at 255.

On review, the Supreme Court held that as a matter of law the claimant failed to establish that Fossum was exposed to asbestos during his post-1945 employment under conditions that could have caused the mesothelioma. *Id.* at 256. Regarding Grasle, an electrical construction company, the nature and intensity of the claimant's exposure to asbestos was not established by the evidence. *Id.* at 255-56. As to Willamette Western, where the claimant was exposed to asbestos in the course of making brake linings, one expert witness testified that that employment could not have caused the disease and the other said that, although there was no statistical evidence that brake lining manufacture caused mesothelioma, "it was possible only in the sense that it could not be ruled out." *Id.* at 256. The court said that the evidence was insufficient as a matter of law to establish that Willamette Western was responsible under the last injurious exposure rule. *Id.* at 256. Footnote 1, on which the majority relies, follows this language in the text:

"In applying the last injurious exposure rule to claims for occupational disease, however, the issue is not which employment actually caused the disease but which employment involved conditions which could have caused it. If conditions of exposure at Grasle could have caused the disease, for example, the exposure would have been prior to the 20-year

minimum period for disease development and Grasle would have been liable as potentially causative under the last injurious exposure rule. The Court of Appeals apparently excluded the Grasle employment because it was not an actual cause. The correct analysis under the last injurious exposure rule, however, is that Grasle is not liable because there is no evidence of exposure at Grasle to conditions which could have caused the disease. The same may be said of the employment at Willamette Western." 293 Or at 256-57.

The reference in footnote 1 to *Bracke* is significant. In *Bracke*, the claimant had demonstrated actual causation. The issue was whether an employer could use the "last injurious exposure rule" as a defense where the worker established that she contracted the disease and suffered disability while working for that employer, but that she also worked for subsequent employers under conditions which could have caused the disease. The court accepted the evidence believed by this court that claimant's subsequent employment only activated the symptoms of her pre-existing disease, and held that a recurrence of symptoms that did not affect the extent of the continuing underlying disease did not shift liability from the initial employer to the subsequent employer. *Id.* at 250. The court noted:

"[T]he employment subsequent to Baza'r did not contribute to the cause of, aggravate or exacerbate the underlying disease. Had that occurred, a later employer would be liable under the last injurious exposure rule of liability, *see* n 5." *Id.*

Footnote 5 in *Bracke* says, in relevant part:

"There is no reason to apply the [last injurious exposure] rule with any greater arbitrariness than is required to achieve its purposes, but there is no basis in this case to recognize an exception or qualification of the rule." *Id.*

Clearly, the holding in *Fossum* does not answer the question before us today. There, the court expressly declined to apply the last injurious exposure rule to two employers when the evidence was insufficient to prove that their workplaces had conditions that could have caused the claimant's disease. Moreover, in the same footnote on which the majority relies, the court recognizes that a defense of actual impossibility may be available "arguably" to reduce the arbitrary operation of the last injurious exposure rule, but it expressly says that it does not decide the issue with which we are faced.

At best, the majority relies on *dictum*. Finally, the reference to *Bracke* indicates that the *Fossum* court was cognizant that a predicate to the application of the "last injurious exposure rule" is that the conditions of the workplace could have caused or contributed to the claimant's disability and that the defense of "actual impossibility" may be available under some circumstances.

The majority also relies on *Runft v. SAIF*, 303 Or 493, 739 P2d 12 (1987), and the statement made in that case that,

> "Whether employment at any one workplace was the actual cause of the disease is irrelevant under the rule." 303 Or at 500.

The issue in *Runft* was whether an employer whose working conditions were the major contributing cause of the claimant's asbestosis could avoid responsibility for payment of compensation by showing that the working conditions at the claimant's later employment contributed to the claimant's disability. The claimant had made no claim against the subsequent employer and the first employer had not sought to join the subsequent employer in the administrative proceeding. The court held that the first employer could not avoid responsibility under those circumstances. The statement, "the actual cause of the disease is irrelevant under the rule," is made in the context of the pronouncement that the last injurious exposure rule relieves claimants of the burden of proving the degree to which, if any, exposure at a particular employer actually caused the disease. It does not necessarily follow from the fact that a claimant is relieved of the burden of proving actual causation, that all of his employers are potentially responsible.

Finally, the majority relies on *Meyer v. SAIF*, 71 Or App 371, 692 P2d 656 (1984), *rev den* 299 Or 203 (1985). In *Meyer*, the claimant sought review of an order of the Board upholding SAIF's denial of benefits for the claimant's asbestosis. Throughout the claimant's career, he had been exposed to asbestos while working for different employers. His last employment-related exposure was in 1978 while employed by SAIF's insured. SAIF denied responsibility on the ground that the claimant's condition was caused by his earlier exposure. The only doctor to testify about the effect of the 1978 exposure on the claimant's condition said:

" 'In my opinion, that particular exposure would have nothing to do with his current condition. Exposure was brief, a mask was worn and the time course for the development of asbestosis is far too long to imagine any exposure in 1978 would have significantly altered his current condition.' " 71 Or App at 374.

We held,

"[t]hat the 1978 exposure was not the actual cause of claimant's present condition does not absolve SAIF from responsibility for the appropriate inquiry under the last injurious exposure rule is not whether the conditions of the last employment actually caused the disease but whether those conditions were of a kind which could have caused the disease over some indefinite period of time. *Mathis v. SAIF*, 10 Or App 139, 499 P2d 1331 (1972); *see Fossum v. SAIF*, 293 Or 252, 256 n 1, 646 P2d 1337 (1982). To that inquiry, Dr. Patterson testified as follows:

" 'Q   And would it be your opinion that the circumstances as described would constitute the type of exposure that, if continued over some period of time, could be significantly injurious to an individual's health?

" 'A   Yes, if these exposures were continued for a sufficient period of time, I think they could be injurious.' " *Meyer*, 71 Or App at 374.

We concluded,

"Because the conditions in claimant's 1978 employment at Contractors, Inc. [SAIF's insured] were of a kind which could have caused asbestosis over some indefinite period of time, that employment is deemed to have caused the disease. *FMC Corp v. Liberty Mutual Ins. Co.*, 70 Or App 370, 689 P2d 1046 (1984) [*adhered to on recon* 73 Or App 223, 698 P2d 551, *rev den* 299 Or 203 (1985)]. SAIF is the responsible insurer." *Meyer*, 71 Or App at 375. (Footnote omitted.)

Here, decedent died before any potentially hazardous work conditions with employer could have caused other tumors. Consequently, employer did not contribute, nor could it have contributed, to decedent's condition. Moreover, the legislature has changed the law of the responsibility of employers since the cases relied on by the majority were decided, the significance of which will be discussed below. In sum, the issue before us is one of first impression, and we

should consider the application of the rule to the facts of this case in the light of the policy underlying the rule.

## III. THE POLICY UNDERLYING THE LAST INJURIOUS EXPOSURE RULE SHOULD NOT APPLY TO THIS CASE BECAUSE IT WILL RESULT IN AN UNJUST IMPOSITION OF RESPONSIBILITY ON EMPLOYER.

Any application of the "Last Injurious Exposure Rule" should coincide with legislative intent inasmuch as the Workers' Compensation Act is a product of political compromise, and not the common law. *McGarrah v. SAIF*, 296 Or 145, 160, 675 P2d 159 (1983). Under current law, a compensable occupational disease is:

> "[A]ny disease * * * arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death * * *." ORS 656.802(1).

In 1990, a special session of the legislature passed Senate Bill 1197, which provides, in relevant part:

> "When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable medical services and disability involving the same condition shall be processed as a new injury claim by the subsequent employer." ORS 656.308(1).

Accordingly, in ORS 656.308(1), the legislature has expressed its intention that only employers who have contributed to the cause of the claimant's disability are responsible employers.[1] *See also SAIF v. Drews*, 318 Or 1, 7 n 3, 860 P2d

---

[1] In *Liberty Northwest Ins. Corp. v. Senters*, 119 Or App 314, 317, 850 P2d 403 (1993), we held that ORS 656.308 was intended to apply to occupational disease claims. That holding is contrary to a statement made by Representative Mannix before the House of Representatives during the process of the adoption of SB 497. *See* Tape Recording, House Special Session, May 7, 1990, Tape 2, Side A at 190. Nonetheless, our holding remains the law.

254 (1993), where the court recognized that one of the purposes of the 1990 amendments was to overturn the line of cases adopting the "last injurious exposure" rule and to "make it more difficult to transfer responsibility for a condition or disability to a subsequent employer." Moreover, as the Supreme Court in *Bracke* admonished, there is no reason to apply what is an arbitrary rule to those situations in which the purpose of the rule is not furthered.

Inherent in the policy underlying the rule is the concept that it is fair to impose liability on an employer who could have contributed to the claimant's disability, because the employer exposed the worker to disease-causing conditions.

> "The reason for the [last injurious exposure rule] lies not in [the] achievement of individualized justice, but rather in [the] utility in spreading liability fairly among employers by the law of averages and in reducing litigation.
>
> "* * * * *
>
> "The operation of the rule * * * provides certainty in a way which is 'somewhat arbitrary.' It operates generally for the benefit of the interests of claimants. *It is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by the operation of the law of averages.* We hold that employers have and may assert an interest in the consistent application of the last injurious exposure rules, either as to proof or liability, so as to assure that they are not assigned disproportionate shares of liability relative to other employers who provide working conditions which generate similar risk." *Bracke*, 293 Or at 248-50. (Emphasis supplied.)

The application of the rule to factual contexts other than this one is fair because it permits the worker to establish that his disability was caused by a disease that could have resulted from conditions at two or more places of employment. Once the causation requirement of some contributing exposure has been met, the last employer of the claimant who could have contributed to the disability is responsible even though the worker has not proved that the last employment was the actual cause of the disease. *Inkley v. Forest Fiber Products Co.*, 288 Or 337, 342-43, 605 P2d 1175 (1980). However, the rule "is not intended to transfer liability from an employer whose employment caused a disability to a later

employer whose employment did not," and it does not prevent "an employer from proving that the claimant's disability was caused by a different employment or that the disability did not arise from any work-related injury." *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 244, 675 P2d 1044 (1984). As we said in *FMC Corp. v. Liberty Mutual Ins. Co.*, 70 Or App 370, 689 P2d 1046 (1984),

> "[I]n order for [employer], as the last employer where conditions existed that *could* have caused the disease, to shift responsibility to an earlier employer where working conditions could have caused the disease, it must establish that the conditions of the earlier employer were the *sole* cause or that it was *impossible* for conditions at [employer's] plant to have caused the disease." 70 Or App at 374. (Emphasis in original.)

Thus, the effect of the rule is to create a risk pool of those employers of the claimant who could have actually contributed to the cause of the claimant's disease and assess responsibility on the basis of the law of averages. Although application of the rule by placing responsibility on the last employer in the risk pool is arbitrary because it may have contributed little to the claimant's disability, generally that hardship is ameliorated by the operation of the law of averages among the employers who exposed the claimant to similar risks.[2] In contrast, for those employers who are not in the risk pool for whatever reason, the policy of spreading the risk among *potentially causative* employers has no application because there is no probability that their work environment contributed to the claimant's disease. In that event, the element of fairness inherent in the policy underlying the rule does not exist. Thus, in *Starbuck*, where the evidence showed that the claimant's disability was caused solely by an injury occurring during an earlier employment, the court held, "[T]here is no reason to apply the rule." 296 Or at 243.

Here, the estate of decedent properly relied on the rule to prove causation. However, that does not prevent any

---

[2] Even if the language in the case law means that the law of averages is spread among all employers whose workplaces have conditions that could cause other claimants to become diseased rather than among those employers of a particular claimant, the efficacy of the rule is lost when other potentially responsible employers are out of state and not subject to the same risk as an Oregon employer.

employer of the decedent from proving that it is not responsible for his disease. Employer offered evidence that it was medically impossible for employer's work conditions to have contributed to the condition that resulted in the decedent's death. Based on that fact, the referee and the Board were correct in refusing to hold employer responsible because it could not have contributed to the causation of decedent's tumor. In the light of the legislature's expression that employers are only responsible for those conditions caused by them, the application of the rule to employer when the decedent's other employers could have caused the disease and when those employers are all out of state makes the majority's ruling particularly unfair to employer. Decedent's other employers are not in the risk pool and subject to the "law of averages" arbitrarily imposed on employer by the majority. The net result of the majority's decision is to enlarge the risk pool by making an Oregon employer responsible for a disease that was like a time bomb in decedent before he ever came to work in Oregon and to which the Oregon employer did not contribute or cause. That's not fair!

There is nothing in the Worker's Compensation Act to suggest that the legislature ever envisioned that an Oregon employer could be responsible for out-of-state employment conditions based on the law of averages among employers world-wide. The majority's empathy for the beneficiaries of decedent is understandable, but it should not empower the imposition of responsibility on an innocent employer. The last injurious exposure rule, a product of judicial fiat, should not be extended beyond the lines drawn by its purpose. Such social adventures should be left to the legislature, which can properly undertake the delicate balancing of the conflicting interest of labor, management and the insurance industry.

I dissent.

De Muniz, J., joins in this dissent.