Argued and submitted October 16, 1996, affirmed April 15, 1998

In the Matter of the Compensation of
Charlene A. Dieringer, Claimant.

THE NEW PORTLAND MEADOWS
and TIG Insurance,
*Petitioners,*

*v.*

Charlene A. DIERINGER,
*Respondent.*

(WCB No. 94-13529; CA A91625)

957 P2d 190

Richard D. Barber, Jr., argued the cause for petitioners. With him on the brief was Bostwick, Sheridan & Brownstein.

Dean Heiling argued the cause for respondent. With him on the brief was Heiling, Dodge & Associates.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

**DEITS, C. J.**

Petitioners, The New Portland Meadows and TIG Insurance (TNPM), seek review of a Workers' Compensation Board order setting aside TNPM's denial of claimant's claim for compensation. ORS 656.298. TNPM argues that the Board erred when it failed to consider a condition, which claimant incurred while she was employed out-of-state, as a "preexisting condition" for purposes of determining compensability. It also contends that the Board erred in its application of the last injurious exposure rule to determine responsibility. We affirm.

Claimant worked as a certified public accountant for Vanport Express (Vanport) in Vancouver, Washington, from February 1990 through August 1993. Her job duties included data entry and preparation of sales and financial reports. In January 1993, she began to experience aching and cramping in the palms of her hands, pain in her wrists and weakness in her arms. In August 1993, she sought treatment from Dr. Irvine. Irvine referred her to Dr. Brown, who diagnosed bilateral ulnar entrapment neuropathy across the cubital tunnels. Two days after that diagnosis, Vanport laid claimant off work. She was unemployed for about a month, during which time the symptoms improved to the point that she had only minor discomfort in her hands and wrists. On September 21, 1993, claimant began working at TNPM as a controller. Her duties were similar to those at Vanport, but she worked more hours and spent more time using the computer. Within weeks, her symptoms began to return. In May 1994, she again sought treatment from Irvine. He recommended surgery. On July 7, 1994, claimant filed a claim with TNPM. She subsequently filed a claim with Vanport. Both claims were denied.

Claimant sought review of TNPM's denial of her claim.[1] After a hearing, the ALJ concluded that claimant's condition was caused by her employment at Vanport and that, therefore, her condition "preexisted" her employment at TNPM. The ALJ held that, because the condition preexisted

---

[1] Claimant also sought review in Washington of Vanport's denial. The record does not reveal how that claim was resolved.

her claim against TNPM, ORS 656.802(2)(b) and ORS 656.005(7) applied and, consequently, claimant had to prove that the employment conditions at TNPM "were the major contributing cause of the combined condition and pathological worsening" of her bilateral ulnar entrapment neuropathy.

The ALJ then concluded that claimant's condition was not worsened by her employment at TNPM and affirmed TNPM's denial. Claimant sought review by the Board of that order. The Board reversed the decision of the ALJ. It concluded that claimant was relying on both employers to prove compensability and thus, for compensability purposes, there was no "preexisting condition." Further, it held that because Vanport could not be considered for purposes of determining responsibility under Oregon Workers' Compensation Law, the standard to be applied was whether claimant's employment with TNPM was "injurious and provided 'potentially causal' conditions" for her disease. It then concluded that claimant had met her burden of proof under that test and, accordingly, that TNPM was responsible for her condition.

■ TNPM assigns error to the Board's decision to set aside its denial. TNPM first argues that the Board misapplied ORS 656.005(7)(a)(B), ORS 656.005(24) and ORS 656.802(2)(b) in concluding that claimant did not have a preexisting condition for purposes of determining compensability. ORS 656.005(7)(a)(B) provides:

> "If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

ORS 656.005(24) provides:

> " 'Preexisting condition' means any * * * disease * * * that contributes or predisposes a worker to disability or a need for treatment and *that precedes the onset of an initial claim* for an injury or occupational disease, or that precedes a claim for worsening pursuant to ORS 656.273." (Emphasis supplied.)

ORS 656.802(2)(b) provides:

"If an occupational disease claim is based on the worsening of a preexisting disease or condition pursuant to ORS 656.005(7), the worker must prove that employment conditions were the major contributing cause of the combined condition and pathological worsening of the disease."

TNPM argues that the phrase "precedes the onset of an initial claim" as used in ORS 656.005(24) means that if the disease existed before the date that the claimant *filed* the claim against the particular employer, in this case TNPM, the condition was "preexisting" under ORS 656.005(24). In making this argument, TNPM relies on ORS 656.005(6), which defines a claim as a "written request for compensation" or a "compensable injury of which a subject employer has notice or knowledge." It asserts that because claimant's condition existed before she filed the claim with TNPM, ORS 656.005(7)(a)(B) and ORS 656.802(2)(b) apply, and the last injurious exposure rule is inapplicable.

The Board rejected this argument, explaining:

"*Since claimant is relying on both her employments to prove compensability, there is no 'preexisting condition.'* Under ORS 656.005(24), a 'preexisting condition' is defined as any injury, disease, or condition that 'contributes or predisposes a worker to disability or need for treatment and that <u>precedes the onset of an initial claim for</u> an injury or occupational disease * * *.' Or Laws 1995, ch 332 § 1 (24) (SB 369, § 1 (24)).

"*This is* the initial claim for claimant's bilateral upper extremity condition. Here claimant has filed an occupational disease claim for bilateral upper extremity condition. Based on *Silveira v. Larch Enterprises*, [133 Or App 297, 891 P2d 697 (1995)], claimant may rely on both her employments, even her employment with Vanport which was not subject to Oregon's workers' compensation laws, for purposes of establishing that her bilateral upper extremity condition *is work related*. There is no evidence that claimant's condition preceded her employment with Vanport. Claimant's claim is not based on the worsening or combining of a preexisting disease or condition. Therefore, there is no upper extremity condition that preexisted the initial onset of this claim. Consequently, neither *amended* ORS

656.802(2)(a)[2] [*sic*] nor ORS 656.005(7)(a)(B) apply to this case." (Emphasis supplied; underline in original.)

We agree with the Board that this *is* the initial claim for claimant's bilateral upper extremity condition and that, therefore, it is *not* a preexisting condition under ORS 656.005(24). Consequently, neither ORS 656.802(2)(b) nor ORS 656.005(7)(a)(B) applies.

We next turn to TNPM's argument that the Board misapplied the last injurious exposure rule. As the Supreme Court explained in *Roseburg Forest Products v. Long*, 325 Or 305, 309, 937 P2d 517 (1997):

"The last injurious exposure rule is both a rule of proof and a rule of assignment of responsibility.

"As a rule of proof, the last injurious exposure rule allows a claimant to prove the compensability of an injury without having to prove the degree, if any, to which exposure to disease-causing conditions at a particular employment actually caused the disease. The claimant need prove only that the disease was caused by employment-related exposure. * * *

"As a rule of assignment of responsibility, the last injurious exposure rule assigns full responsibility to the last employer that could have caused the claimant's injury." (Citations and footnote omitted.)

*See United Parcel Service v. Likos*, 143 Or App 486, 488-89, 924 P2d 857 (1996).

TNPM's disagreement is not with the rule of proof aspect of the last injurious exposure rule. Rather, it contends that the Board erroneously applied the last injurious exposure rule in determining the responsible employer. Specifically, TNPM argues that, in determining if responsibility should remain with TNPM as the last employer, the Board erred in applying a "potentially causal" standard rather than an "actual causation" standard. TNPM argues that responsibility does not remain with it, because there was no evidence that claimant's employment with TNPM *actually* contributed to claimant's condition.

---

[2] As indicated in the Board's corrected order on review, this citation should have been to ORS 656.802(2)(b).

■ The Board did apply a "potentially causal" standard in concluding that TNPM was responsible because it was the last employer that could have caused claimant's injury. That is the proper standard to use in initially assigning responsibility under the last injurious exposure rule. *See Roseburg Forest Products*, 325 Or at 313; *see also Barrett Business Services v. Williams*, 148 Or App 1, 4, 939 P2d 50 (1997). In response to insurer's argument, however, the Board also explained that under this court's opinion in *Beneficiaries of Strametz v. Spectrum Motorwerks*, 135 Or App 67, 897 P2d 335, *mod* 138 Or App 9, 906 P2d 825 (1995), actual causation was immaterial. The Board stated:

> "Drs. Irvine Nye and Brown agreed that, based on the comparison of the August 1993 and August 1994 nerve conduction studies, there was no evidence of a worsening of claimant's condition during her employment at Portland Meadows. However, the critical issue is whether claimant's employment with Portland Meadows was injurious and provided 'potentially causal' conditions for her bilateral upper extremity condition. *See Silveira v. Larch Enterprises,* [133 Or App 297, 891 P2d 697 (1995)].
>
> "* * * * *
>
> "We are persuaded that, based on reports from Drs. Irvine and Nye, claimant's work activities at Portland Meadows were injurious and provided 'potentially causal' conditions for her bilateral upper extremity condition. Therefore, Portland Meadows is responsible for claimant's condition.
>
> "Although the insurer argues that there is no proof that claimant's employment with Portland Meadows actually caused her condition, even if the insurer is correct, that factor is not dispositive. In *Beneficiaries of Strametz v. Spectrum Motorwerks*, 135 Or App 67, 71, *mod* 138 Or App 9 (November 22, 1995), the court said that it was immaterial that the employers in that case were not the actual cause of the claimant's disease. Rather, '[a]ll claimant must show to establish a compensable claim is that conditions at the Oregon employer were of the type that could have caused the disease. (*Id.*)' " (Some citations and references to exhibits omitted.)

■     After the Board's decision in this case, however, the Supreme Court reversed our decision in *Strametz*. *Beneficiaries of Strametz v. Spectrum Motorwerks*, 325 Or 439, 444, 939 P2d 617 (1997); *Roseburg Forest Products*, 325 Or at 313. Under those decisions, initial responsibility is assigned to the last employer that could have caused claimant's injury. However, that employer may avoid responsibility by showing either that conditions at its place of employment could not have caused claimant's disease or that a previous employment was the sole cause of the disease.

Here, the Board was correct in its initial assignment of responsibility to TNPM because it was the last employment that could have caused the disease. The Board was also correct that all claimant had to show to establish a compensable claim was that conditions at the TNPM were such that they could have caused claimant's disease. However, in view of the Supreme Court's decisions in *Roseburg Forest Products* and *Strametz*, the Board's statement that proof of actual causation at TNPM is immaterial is not entirely correct. Evidence of actual causation would be material if employer sought to avoid responsibility by proving that conditions at its place of employment could not have caused claimant's disease or that the employment at a previous employer was the sole cause of the disease.

Despite this inaccuracy in the Board's statement, however, it is not necessary to remand to the Board for reconsideration. The Board's comment was not necessary to its resolution of the argument that employer made, which was that *claimant* had to establish actual causation by her employment at TNPM in order to prove a compensable claim. As discussed above, that is not the standard used to assign initial responsibility under the last injurious exposure rule. The Board properly found that conditions at TNPM were "of the type that could have caused" claimant's disease and that finding is supported by substantial evidence. TNPM did not prove that it could not have been the actual causation of claimant's condition or that her employment at Vanport was the sole cause of the disease. The Board did not err in setting aside TNPM's denial of responsibility.

Affirmed.