Argued and submitted March 29, reversed and remanded for reconsideration
July 7, 1999

In the Matter of the Compensation of
Michael D. Cessnun, Claimant.

SAIF CORPORATION
and Gary Foglio Trucking, Inc.,
*Petitioners,*

*v.*

Michael D. CESSNUN,
*Respondent.*

(WCB 97-09918; CA A103416)

984 P2d 894

David L. Runner argued the cause and filed the brief for petitioners.

Christopher D. Moore argued the cause for respondent. With him on the brief was Malagon, Moore & Jensen.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Employer seeks review of the order of the Workers' Compensation Board (Board) that held claimant's occupational disease claim compensable. Employer contends that the Board applied the wrong legal standard when it concluded that claimant did not have a "preexisting condition" within the meaning of ORS 656.005(24). We reverse and remand for reconsideration.

We review the Board's order to determine whether, as a matter of law, the Board applied an incorrect legal standard. ORS 183.482(8)(a); *Fred Meyer, Inc. v. Crompton*, 150 Or App 531, 533, 946 P2d 1171 (1997). In its order, the Board adopted the administrative law judge's (ALJ) findings of fact, and we derive the following facts from those findings.

Claimant began working as a log truck driver for employer in 1989. His work required frequent and often forceful overhead use of his arms as he threw and tightened chain and cable binders over the logs on his truck. In 1996, his left shoulder began to bother him. By April 1997, the shoulder had become painful when he was engaged in overhead activity or lifting. On July 16, 1997, he sought medical treatment, and subsequently a large rotator cuff tear was found. Claimant filed his workers' compensation claim on September 8, 1997. In November, claimant's treating physician performed surgery to repair the rotator cuff tear. During surgery, he noted the presence of a prominent acromial spur, which he later stated was a "preexisting condition" that was a "causative factor" in the development of claimant's rotator cuff tear.[1] The physician identified claimant's work as the major contributing cause of both the pathological worsening of the rotator cuff tear and the need for treatment. According to the treating physician, the rotator cuff tear was not the result of any specific acute injury. Instead, the tear began "insidiously" and became worse over time as claimant repeatedly used his arm in overhead work.

---

[1] The "acromion" is "the outer end of the spine of the scapula" and "form[s] the outer angle of the shoulder * * * articulating with the clavicle." *Webster's Third New Int'l Dictionary*, 19 (unabridged ed 1993).

Employer denied the claim for compensation. Following a hearing, the ALJ concluded that claimant's work activity had combined with a preexisting condition, but that the claim was compensable because claimant's work activity was the major contributing cause of the combined condition, of the pathological worsening of the preexisting condition, and of the need for treatment of the combined condition. On review, the Board affirmed, but based its decision on a different analysis. The Board concluded that it first was required to decide whether claimant had a preexisting disease or condition within the meaning of ORS 656.005(24). In determining that he did not, the Board appears to have decided, as a matter of law, that, at least in occupational disease cases, a disease or condition is not "preexisting" unless it is present before the start of the work exposure that eventually leads to the claim. The Board found that claimant did not have such a disease or condition in this case, because there was no evidence that the acromial spur in his left shoulder was present before he began working for employer in 1989. Having found that claimant's occupational disease claim was not based on a worsening of a separate preexisting disease or condition, the Board then considered whether claimant's work for employer was the major contributing cause of his left rotator cuff tear. Deferring to the opinion of claimant's treating physician, the Board decided that it was and agreed with the ALJ that the claim was compensable.

On review, employer argues that the Board erred when it concluded that, in an occupational disease case, a "preexisting condition" must predate the work exposure that eventually leads to the claim. Employer contends that a "preexisting" condition must antedate

"that point in time at which the alleged occupational disease has become manifest, has required medical treatment or resulted in disability, and has been claimed by the claimant under the Workers' Compensation Law or has otherwise come to the employer's attention as a work-related condition."

Claimant agrees with the Board's legal analysis and also argues, alternatively, that, even under employer's reading of the statutes, his claim is compensable. We agree with

employer that the Board erred, but we do not accept its statutory analysis. We conclude that, in occupational disease cases, a disease or condition is a "preexisting" one only if it both "contributes or predisposes [the claimant] to disability or a need for treatment," ORS 656.005(24), *and* precedes either the date of disability or the date when medical treatment is first sought, whichever occurs first. Because the Board applied an incorrect legal standard, we remand for reconsideration.

We begin our analysis by setting out the pertinent statutory provisions. The Board found, and the parties appear to accept, that this case involves an occupational disease claim. We agree, because claimant's rotator cuff tear developed gradually, rather than as the result of a discrete event. *See Mathel v. Josephine County*, 319 Or 235, 240, 875 P2d 455 (1994) (classic distinction between occupational diseases and injuries is that occupational diseases are "gradual rather than sudden in onset"). An "occupational disease" is statutorily defined as:

> "[A]ny disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, *and which requires medical services or results in disability or death * * *.*"

ORS 656.802(1)(a) (emphasis added).

Under the occupational disease law, a claimant "must prove that employment conditions were the major contributing cause of the disease." ORS 656.802(2)(a). In addition:

> "If the occupational disease claim is based on the worsening of a *preexisting disease or condition* pursuant to ORS 656.005(7), the worker must prove that employment conditions were the major contributing cause of the combined condition and pathological worsening of the disease."

ORS 656.802(2)(b) (emphasis added). An occupational disease claim generally is "considered an injury." ORS 656.804. In particular, "[o]ccupational diseases shall be subject to all of the same limitations and exclusions as accidental injuries

under ORS 656.005(7)." ORS 656.802(2)(c). *See also Brown v. A-Dec, Inc.,* 154 Or App 244, 247, 961 P2d 280 (1998) (applying the provisions of ORS 656.005(7)(a)(B) "in determining the compensability of an occupational disease").

A "compensable injury" is:

"[A]n accidental injury * * * arising out of and in the course of employment *requiring medical services or resulting in disability or death* * * *."

ORS 656.005(7)(a) (emphasis added). Among the "limitations and exclusions" that apply to accidental injury claims—and that therefore also apply to occupational disease claims pursuant to ORS 656.802(2)(c)—is the following provision:

"If an otherwise compensable injury combines at any time with a *preexisting condition* to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

ORS 656.005(7)(a)(B) (emphasis added). A "preexisting condition" is defined as:

"[A]ny injury, disease, congenital abnormality, personality disorder or similar condition that contributes or predisposes a worker to disability or need for treatment and that *precedes the onset of an initial claim for an injury or occupational disease,* or that precedes a claim for worsening pursuant to ORS 656.273."

ORS 656.005(24) (emphasis added).

At issue in this case is whether claimant's claim is subject to the specific causation requirements of ORS 656.802(2)(a) and ORS 656.005(7)(a)(B), which turns on whether he had a "preexisting condition" within the meaning of the relevant statutes. The Board held, and claimant agrees, that claimant's condition was not "preexisting" within the meaning of the statutes, because it did not precede the commencement of his 1989 employment. Employer argues that claimant's condition was "preexisting," because it preceded the claim itself. In resolving that question, we

attempt to ascertain the intended meaning of the statutes, looking to their text in context and, if necessary, their legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 656.005(24), the statute which defines "preexisting condition," draws a distinction between an "initial" claim and one "for worsening pursuant to ORS 656.273," in other words, an aggravation claim. *See* ORS 656.273(2) ("To obtain additional medical services or disability compensation, the injured worker must file a claim for aggravation with the insurer or self-insured employer."); ORS 656.245(4)(b)(A) (permitting insurers or self-insured employers to require injured workers to receive services from managed care organizations "[f]or initial or aggravation claims" filed after a certain date); ORS 656.262(15) (allowing suspension of all or part of compensation if worker unreasonably fails to cooperate with investigation regarding "an initial claim to establish a compensable injury or an aggravation claim to reopen the claim for a worsened condition"). In the case of an "initial" claim, such as this one, to be "preexisting," a disease or condition—or at least one that is distinct from the allegedly compensable disease or condition—must have "precede[d] the onset" of the claim. ORS 656.005(24). In the case of an aggravation claim, a "preexisting condition" is one that precedes the claim itself. Thus, the statute draws a distinction between preceding the "onset" of the claim and preceding the claim itself. The two are not synonymous.[2]

In that light, employer's construction of the statutes is untenable. Employer reads "the onset of the * * * claim" as the filing of the claim itself. That deprives the phrase "the onset of" of any meaning and ignores the distinction between "the onset of the * * * claim" and the claim itself, which is reflected in the language of ORS 656.005(24).

It remains to be determined, however, precisely what "onset" means. In common usage, the term refers to

---

[2] Our holding does not affect the extent to which, in cases involving the last injurious exposure rule, a claimant may rely on the entirety of his or her prior employment in proving that an occupational disease was caused by employment-related exposure.

"beginning, commencement, start." *Webster's Third New Int'l Dictionary*, 1577 (unabridged ed 1993). A "claim" is statutorily defined as either "a written request for compensation from a subject worker * * * or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(6). It is apparent that the "onset" of a "claim" does not refer to the commencement of the written request for compensation and that the relevant definitional component is the onset of the "compensable injury." In the case of an occupational disease, however, there is frequently no discrete injurious event that may be identified. The hallmark of an occupational disease is its gradual development. *Mathel*, 319 Or at 240.

For that reason, the "onset" of an occupational disease generally has been regarded as the point at which the disease manifests itself. *See generally* 3 Larson's *Workers' Compensation Law* § 39.50 (1988). Our decisions are consistent with that general approach. In *Medford Corp. v. Smith*, 110 Or App 486, 488, 823 P2d 441 (1992), for example, we held that, in the absence of a discrete disability, "the date of the onset of the [occupational] disease is the date on which claimant first sought medical treatment." Similarly, in *Papen v. Willamina Lumber Co.*, 123 Or App 249, 254, 859 P2d 1166 (1993), we held that "[t]he date of injury in an occupational disease case is either the date of disability or the date when medical treatment is first sought." Nothing in the text or context of the relevant statutes suggests that the legislature intended to depart from that understanding as to the meaning of "onset" of an occupational disease.

In that light, the Board's construction is likewise untenable. Its conclusion that "the onset of the claim" refers to the commencement of employment finds no support in the language of the statute and cannot be reconciled with prior case law holding that the "onset" of an occupational disease is either the date the disability becomes manifest or the date of first medical treatment.

The Board followed its interpretation with a citation to our decision in *The New Portland Meadows v. Dieringer*, 153 Or App 383, 957 P2d 190 (1998). We find nothing in that decision that lends support to the Board's interpretation,

however. In that case, the claimant had worked for two employers, first in Washington and then in Oregon. She filed an occupational disease claim based on work conditions in both employment locations. The employer argued that the causation standard for combined conditions applied, because the claimant had a preexisting condition—her employment in Washington—and that, as a result, she should be required to prove that her Oregon employment was the major contributing cause of her disability or her need for treatment. The Board held that, because the claimant had filed a claim for a single condition based on her employment in both locations, there was no preexisting condition. We agreed, holding that a portion of a compensable condition cannot be its own "preexisting condition." *Id.* at 387-88. We did not hold that a "preexisting condition" dates from the commencement of employment.

Claimant argues that, if the Board applied an incorrect legal analysis, a remand is not necessary because the medical evidence still is sufficient to prove that this claim is compensable. Ultimately, the Board may agree or disagree, but "[t]hat is for the Board to decide in the first instance on remand." *Medford Corp.*, 110 Or App at 489. We therefore remand to the Board for it to reconsider this case under the correct legal standard.

Reversed and remanded for reconsideration.